**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Harlan PEACOCK and Harold Peacock,
Defendant-Appellants.**

Nos. 84–1007, 84–1011.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 13, 1984.

Decided May 21, 1985.

Donald Cavin Hill, Asst. U.S. Atty., Reno, Nev., for plaintiff-appellee.

Jerald W. Newton, Los Angeles, Cal., for defendant-appellants.

Before MERRILL, KENNEDY, and ANDERSON, Circuit Judges.

KENNEDY, Circuit Judge:

The appellants challenge their convictions for the manufacture and distribution of controlled substances, conspiracy, and related offenses. First, they attack the validity of a search warrant issued for their residential property, arguing that the supporting affidavit did not set forth probable cause and that it contained a material omission. Second, appellants maintain that the consent obtained for a later search of other property was invalid because coerced. Third, they contend there was insufficient evidence to support their convictions. Fourth, they allege error as the result of the district court's delegation of voir dire to a magistrate. Finally, they argue that their convictions on both conspiracy counts were impermissible because multiplicious. Each of the first four challenges we resolve against appellants. We do conclude, however, that the conspiracy counts were multiplicious and, therefore, the convictions on the second conspiracy count must be reversed.

Harlan and Harold Peacock, father and son, were charged with: (1) conspiracy to manufacture and distribute amphetamine and phenyl-2-propanone (P–2–P) in violation of 21 U.S.C. § 846; (2) transportation of chemicals and equipment in interstate commerce in violation of 18 U.S.C. § 1952; (3) attempted manufacture of P–2–P in violation of 21 U.S.C. §§ 841(a)(1), 846; and (4) manufacture of amphetamine in violation of 21 U.S.C. § 841(a)(1). Defendants were found guilty on all counts following a jury trial.

The investigation leading to the arrests began with the discovery in the Nevada desert of discarded barrels containing remnants of methamphetamine. Witnesses reported a certain U-Haul truck had been in the vicinity. The truck was traced to Harlan Peacock, who had been seen driving it about the time the barrels were discarded. After its return, the truck itself had a distinctive odor associated with methamphetamine, and there were barrel imprint rings visible on the truck bed.

This information, recited in considerably more detail, was the essential basis for a search warrant issued for the Peacock residence at Cave Rock, Nevada. Contrary to appellants' contention, there was probable cause for issuance of the warrant. For probable cause to exist, a magistrate need not determine that the evidence sought is *in fact* on the premises to be searched, *United States v. Bowers*, 534 F.2d 186, 192 (9th Cir.), *cert. denied*, 429 U.S. 942, 97 S.Ct. 360, 50 L.Ed.2d 311 (1976), or that the evidence is more likely than not to be found where the search takes place. *United States v. Taylor*, 716 F.2d 701, 705–06 (9th Cir.1983). The magistrate need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit. *Taylor*, 716 F.2d at 705–06 (quoting *United States v. Hendershot*, 614 F.2d 648, 654 (9th Cir.1980)).

In reviewing the magistrate's determination that there was probable cause, we need find only that there was a substantial basis for the conclusion. *Illinois v. Gates*, 462 U.S. 213, 233, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983); *United States v. Seybold*, 726 F.2d 502, 503 (9th Cir.1984). In doubtful cases, the reviewing court should give preference to the validity of the warrant. *United States v. Ventresca*, 380 U.S. 102, 106, 109, 85 S.Ct. 741, 744, 746, 13 L.Ed.2d 684 (1965); *United States v. Flores*, 679 F.2d 173, 176 (9th Cir.), *cert. denied*, 459 U.S. 1148, 103 S.Ct. 791, 74

L.Ed.2d 996 (1983). Under these standards, there was more than a sufficient showing for obtaining the warrant to search the appellants' Cave Rock residence.

Appellants contend the affidavit in support of the warrant omitted a material fact. A neighbor had told one of the officers that he had not detected chemical odors around the residence, and the officers failed to recite this fact in the affidavit. The omission was immaterial. The drug enforcement officer was experienced and determined that the lack of odor from the distance of the neighbor's house was inconclusive. Further, even if that information had been included, the magistrate reasonably could have found probable cause for issuance of the warrant.

■ Arlene Peacock, who is Harlan's wife and Harold's mother, consented to the search of a second residence, called the Clear Creek property. Appellants claim the consent was coerced. The contention is without merit. Discrediting Arlene Peacock's claim of coercion on the basis of her close connection to the defendants, the district court found she had voluntarily signed the consent form despite her daughter's advice against it. Based on the testimony before the district court, we cannot say the finding was clearly erroneous. *See United States v. Faherty*, 692 F.2d 1258, 1260 (9th Cir.1982); *United States v. Lemon*, 550 F.2d 467, 472 (9th Cir.1977).

■ The evidence is sufficient to support the convictions, except for the second conspiracy count, as noted below. Our standard of review requires us to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. In making this assessment, the crucial inquiry is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Ospina*, 739 F.2d 448, 450–51 (9th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 262, 83 L.Ed.2d 198 (1984).

At trial the Government introduced substantial evidence in addition to the discarding of the barrels and to Harlan Peacock's connection to the rented truck. Experts recognized the odor of phenylacetic acid inside the Cave Rock residence. In the downstairs kitchen, the officers found filter papers that contained methamphetamine and the odor of phenylacetic acid and chemical bottles with the odor of methylamine, a chemical used in the manufacture of methamphetamine. Other substantial evidence was discovered at the Clear Creek property. It was shown that Harlan Peacock owned Clear Creek and sought immediate possession of the property following its purchase. He at once had commenced alterations to the garage, including the installation of high voltage electric lines, a hot water heater, and a large sink, all essential to the operation of a methamphetamine laboratory. Several items, including empty containers of acetic anhydride, phenylacetic acid, and phenyl acetone found during the search, indicated the lab had been used to manufacture P–2–P and methamphetamine.

Harlan Peacock's telephone bill for March indicates that he made three calls on March 1 to RJM Labs, a chemical supply house in Santee, California, which sells caustic soda, anhydrous sodium acetate, and laboratory glassware. The chemicals found at Clear Creek were of the type sold by RJM, and several of the containers bore RJM labels. RJM's management identified a variety of items photographed at the clandestine lab as originating from its company. The trier of fact could infer that the chemicals and equipment used by the Peacocks were obtained from RJM Labs and transported from California, the only state in which RJM does business.

■ There was also sufficient evidence to convict Harlan's son Harold. Harold was present during the negotiations for the purchase of the Clear Creek property, and, although he did not supervise, he participated in the remodeling of the house and garage to install the laboratory. Despite

Harold's protestations to the contrary, there was admissible evidence before the trier of fact which proved he resided at the Cave Rock house. Defense witness Timothy McLaughlin repeatedly stated that Harold and Harlan Peacock both lived there. The search of the Cave Rock residence disclosed chemical bottles and filter papers containing traces of amphetamine in Harold's room. He accompanied his father to return the U-Haul. Finally, his pickup truck smelled of chemicals used to manufacture amphetamine.

Based on the evidence, a rational trier of fact could have found the essential elements of the charged crimes beyond a reasonable doubt. For the same reasons that there is sufficient evidence to support the convictions on the substantive counts, it was not error for the trial court to deny Harold Peacock's Rule 29 motion for judgment of acquittal.

Appellants cite as reversible error the order by the district court that a magistrate preside over selection and voir dire of the jury. As we understand the record, the magistrate did conduct voir dire and did preside over the selection of twelve jurors. The district judge reviewed the voir dire questions asked by the magistrate and asked further voir dire questions at the request of counsel. The jurors were sworn and impaneled by the district judge.

As there was a specific objection to delegation of the initial jury selection duties to the magistrate, this case is unlike the appeal to the Second Circuit in *United States v. DeFiore*, 720 F.2d 757, 764–65 (2d Cir. 1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1684, 80 L.Ed.2d 158 (1984), where the court did not reach the merits of the argument because there had been no contemporaneous objection. We reach the substantive issue of the propriety of the delegation to the magistrate, and we find no error.

■ The referral of matters to a magistrate is governed by the United States Magistrates Act, 28 U.S.C. §§ 631–639 (1982), which sets forth the matters properly referrable. 28 U.S.C. § 636. Subject to certain exceptions not relevant here, a dis-

trict judge may designate a magistrate to hear and determine pretrial matters pending before the court. 28 U.S.C. § 636(b)(1)(A). Matters so delegated may be reconsidered by the district court when the magistrate's order is clearly erroneous or contrary to law. *Id.; United States v. Raddatz*, 447 U.S. 667, 673, 100 S.Ct. 2406, 2411, 65 L.Ed.2d 424 (1980). A district judge may also designate a magistrate to conduct hearings and to submit to the court proposed findings of fact and recommendations for disposition of the matter. 28 U.S.C. § 636(b)(1)(B). This procedure does not offend Article III of the Constitution so long as there is de novo review by the district court. *Id.; Raddatz*, 447 U.S. at 673–76, 100 S.Ct. at 2411–13. Finally, a magistrate may be assigned "such additional duties as are not inconsistent with the Constitution and laws of the United States." 28 U.S.C. § 636(b)(3).

■ Although the statutory subsection relied upon by the district court in ordering the referral is unclear from the record, we conclude the delegation was permissible under 28 U.S.C. § 636(b)(3). In so holding, we align ourselves with the First Circuit, which has upheld the referral of jury selection proceedings to a magistrate under this subsection. *United States v. Rivera-Sola*, 713 F.2d 866, 872–74 (1st Cir.1983). Congress intended to confer wide latitude upon the courts in referring matters to magistrates under subsection 636(b)(3), H.R.Rep. No. 1609, 94th Cong., 2d Sess. 12, *reprinted in* 1976 U.S.Code Cong. & Ad.News 6162, 6172, and some courts have approved the delegation to magistrates of duties not expressly enumerated in section 636. *See e.g., Mathews v. Weber*, 423 U.S. 261, 267–68, 96 S.Ct. 549, 552–53, 46 L.Ed.2d 483 (1976) (referral to magistrate of all actions to review administrative determinations regarding entitlement to Social Security benefits); *Rivera-Sola*, 713 F.2d 866, 872–74 (1st Cir.1983) (referral of voir dire to magistrate); *United States v. Boswell*, 565 F.2d 1338, 1341–42 (5th Cir.) (permitting magistrate to preside over portion of closing argument on account of judge's illness),

*cert. denied*, 439 U.S. 819, 99 S.Ct. 81, 58 L.Ed.2d 110 (1978). The referral of voir dire under this subseciton is particularly appropriate because the Legal Manual for United States Magistrates lists "[c]onduct of voir dire and selection of juries for district judges" as an "additional duty" for magistrates. Administrative Office of the United States Courts, Legal Manual for United States Magistrates § 3.10(3).

Having concluded that the procedure utilized in this case is authorized by statute, our only remaining inquiry is whether it comports with the requirements of Article III of the Constitution. We conclude that it does. Although section 636(b)(3) contains no explicit statement regarding the availability of review by an Article III judge, we have determined that the referral of matters to a magistrate pursuant to this ection does not offend the Constitution so long as de novo review is available in the district court. *See Raddatz*, 447 U.S. at 673–76, 100 S.Ct. at 2411–13; *Pacemaker Diagnostic Clinic, Inc. v. Instromedix, Inc.*, 725 F.2d 537, 546 (9th Cir.) (en banc) (alluding to de novo review of all referrals under section 636(b)), *cert. denied*, — U.S. ——, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984).

In *Raddatz* the Court upheld, over constitutional objection, the referral of a suppression motion to a magistrate under 28 U.S.C § 636(b)(1). In so doing, the Court relied upon the statutory scheme under which the ultimate decision-making authority was vested in an Article III judge. *Raddatz*, 447 U.S. at 677–83, 100 S.Ct. at 2413–16. This reservation of authority was also crucial to the analysis employed by Justice Blackmun in his concurrence. *Raddatz*, 447 U.S. at 686, 100 S.Ct. at 2417 (Blackmun, J., concurring). In *United States v. Saunders*, 641 F.2d 659 (9th Cir.1980), *cert. denied*, 452 U.S. 918, 101 S.Ct. 3055, 69 L.Ed.2d 422 (1981), our court upheld the use of a magistrate to direct the jury to continue its deliberations. We rejected defendant's Article III objections because the magistrate's instruction was subject to review by the district court. *Saunders*, 641 F.2d at 663–64. Under this same rationale,

we find no error in the referral procedure utilized in this case.

■ De novo reivew of the magistrate's voir dire by the district court was available here. The district judge required counsel to submit copies of all voir dire questions propounded in the proceedings before the magistrate and additionally invited counsel to submit additional questions. Appellants' counsel took full advantage of this opportunity and, following the completion of the supplemental questioning, offered no objections to the composition of the jury. Appellants now complain that full de novo review was impossible because the district court was not presented with a transcript of the proceedings before the magistrate. Appellants, however, did not request such searching review from the district court. Moreover, no specific rulings of the magistrate were challenged by appellants' counsel and, therefore, no specific prejudice has been demonstrated. Where de novo review is required to satisfy Article III concerns, it need not be exercised unless requested by the parties. *Saunders*, 641 F.2d at 664; *see* 28 U.S.C. § 636(b)(1)(C). Therefore, the review conducted by the district court in this case fully satisfied the commands of Article III of the Constitution.

Our conclusion that the referral of voir dire in the circumstances of this case falls within the scope of subsection 636(b)(3) should not be read as an authorization for district judges to delegate other responsibilities in civil or criminal trials. Inappropriate delegation of inherently judicial functions may erode the right of the litigants to an Article III adjudication. *See Pacemaker Diagnostic Clinic, Inc.*, 725 F.2d at 541–42; *Saunders*, 641 F.2d at 663; *see generally Glidden Co. v. Zdanok*, 370 U.S. 530, 549, 82 S.Ct. 1459, 1472, 8 L.Ed.2d 671 (1962).

■ Our holding in this case in no way detracts from the importance of voir dire. The process of voir dire constitutes a significant element of a criminal trial. *Pointer v. United States*, 151 U.S. 396, 408–09, 14 S.Ct. 410, 414–15, 38 L.Ed. 208 (1894); *Lewis v. United States*, 146 U.S. 370, 376,

13 S.Ct. 136, 138, 36 L.Ed. 1011 (1892); *United States v. Baldwin,* 607 F.2d 1295, 1297 (9th Cir.1979); 5 J. Wigmore, Evidence § 1367 (3d ed. 1940). It is understandable that some judges would consider it essential for their control of the trial to preside over the entire voir dire and selection of the jury. By so doing, they have the opportunity to weigh the demeanor of the prospective jurors in the event later proceedings require the interrogation of jurors followed by a credibility determination. The trial judge can use the selection process to establish control over the trial at an early stage.

There may be sound reasons, however, for a trial judge to allow the magistrate to assist, as was done in this case. This circuit, together with each of the other circuits in the federal system, has been instructed to improve its efficiency in juror utilization. The Judicial Conference of the United States has adopted a goal "that all district courts limit the percentage of jurors not selected, serving, or challenged on voir dire or orientation day to 30 percent." Report of the Proceedings of the Judicial Conference of the United States, p. 35 (March 8–9, 1984). The Judicial Council of the Ninth Circuit has requested the district courts to revise their jury management plans to achieve this goal. Minutes of the Judicial Council of the Ninth Circuit, p. 4 (Seattle, Washington, Aug. 14, 1984). The practice of delegating voir dire to a magistrate may assist the district courts in accomplishing this objective.

■■■ Counts I and II of the indictment charged defendants with two separate drug conspiracies in violation of a single statute, 21 U.S.C. § 846. Count I alleged a conspiracy to manufacture and distribute amphetamine; Count II alleged a conspiracy to manufacture and distribute P-2-P. We find these counts to be multiplicious.

■■■ The gist of the crime of conspiracy is an agreement to commit unlawful acts. *Braverman v. United States,* 317 U.S. 49, 53, 63 S.Ct. 99, 101, 87 L.Ed. 23 (1942). If there exists but a single agreement to achieve the objectives of the con-

spirators, there exists but a single conspiracy. *United States v. Arbelaez,* 719 F.2d 1453, 1457 (9th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 3543, 82 L.Ed.2d 847 (1984); *United States v. Bloch,* 696 F.2d 1213, 1215 (9th Cir.1982). This remains true although the agreement contemplates the violation of several statutes rather than one. *Braverman,* 317 U.S. at 53, 63 S.Ct. at 101; *United States v. Basurto,* 497 F.2d 781, 791 (9th Cir.1974); *United States v. Noah,* 475 F.2d 688, 693 (9th Cir.), *cert. denied,* 414 U.S. 821, 94 S.Ct. 119, 38 L.Ed.2d 54 and 414 U.S. 1095, 94 S.Ct. 728, 38 L.Ed.2d 553 (1973). The Government may not divide a single agreement into multiple ones, and hence several conspiracies, merely because the agreement contemplates the violation of multiple penal statutes. *United States v. Solano,* 605 F.2d 1141, 1144 (9th Cir.1979), *cert. denied,* 444 U.S. 1020, 100 S.Ct. 677, 62 L.Ed.2d 652 (1980). Of course, each case depends on its facts. There may be cases in which there is a conspiracy to manufacture a precursor chemical and a separate actionable criminal conspiracy to manufacture the end product. That did not occur here.

The evidence in the case at bar demonstrated the existence of one conspiracy. The two counts charged violations of not only the same conspiracy statute but also the same underlying statute, the same parties, duration, location, and overt acts. Further, because P-2-P is a precursor of amphetamine, it appears that the manufacture of P-2-P in the circumstances of this case was not an end of the alleged conspiracy, but rather a means toward the ultimate goal. *Cf. United States v. UCO Oil Co.,* 546 F.2d 833, 837 (9th Cir.1976) (the making of false statements and the concealment of a material fact by trick are not distinct activities, but rather the former is a means toward the accomplishment of the latter), *cert. denied,* 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977). The counts were multiplicious, and it was impermissible for the defendants to be convicted on both counts.

For the foregoing reasons, the convictions of each defendant for the substantive offenses and for the conspiracy to manufacture and distribute amphetamine (Counts I, III, IV, and V of the indictment) are affirmed. The convictions for the conspiracy to manufacture the precursor chemical (Count II of the indictment) is reversed.

AFFIRMED IN PART and REVERSED IN PART.