**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Richard Angelo CALABRESE and Carol Ann Calabrese, Defendants-Appellants.**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Terry A. LOGAN, Defendant-Appellant.**

**Nos. 85–3116, 86–3019 and 86–3021.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 4, 1987.

Decided Aug. 21, 1987.

**4.** Those decisions are now before the Oregon

Court of Appeals.

Philip E. Pitzer, Cincinnati, Ohio, for defendants-appellants Richard and Carol Calabrese.

Joseph Saint-Veltri, Denver, Colo., for defendant-appellant Terry Logan.

James E. Seykora, Billings, Mont., for plaintiff-appellee.

Before SNEED and HALL, Circuit Judges, and STEPHENS,* District Judge.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Defendants Terry Logan, Richard Calabrese, and Carol Calabrese were convicted by a jury of conspiracy to manufacture and distribute methamphetamine in violation of 21 U.S.C. § 846. Logan was also convicted of manufacturing and distributing methamphetamine in violation of 21 U.S.C. § 841(a)(1). All three defendants appeal from their convictions. This court has jur-

---

* Honorable Albert Lee Stephens, Jr., Senior United States District Judge, Central District of California, sitting by designation.

isdiction over the appeals pursuant to 28 U.S.C. § 1291. We affirm.

### I.

After several months of investigation, on October 31, 1984, federal law enforcement officials obtained search warrants for property owned by defendants Richard and Carol Calabrese, property owned by defendant Terry Logan, and the premises of Sheridan Towing, a business held in the name of Richard Calabrese. Logan is the brother of Carol Calabrese; Richard Calabrese is the husband of Carol Calabrese.

The officials executed the warrants on November 2, 1984. During their search of the Calabrese residence, the agents seized evidence suggesting that the defendants were violating federal drug laws. Among the items seized there were the following: a list in the handwriting of Carol Calabrese of chemicals needed to manufacture methamphetamine, a note in Carol Calabrese's purse reading "110 lbs. cut" and "30 lbs. phospherous," firearms, large quantities of hidden cash, false identification papers for both Richard and Carol Calabrese, and tax notes for all three defendants in the handwriting of Carol Calabrese. The tax notes were to be used as suggestions as to what income should be reported on tax returns. The evidence indicated that there were no regular records kept of actual income. The officials seized further evidence of drug-related activity during their search of a detached outbuilding on the Logan premises. Among the items seized there were: two funnels, five 20–litre acetone cans, mixing bowls, a scale with a 75–pound weighing capacity, and a gas mask. Subsequently, a material found on the funnels was identified as methamphetamine.

After the November 2, 1984 searches, the Federal Bureau of Investigation took possession of the Logan premises. The government then filed a verified complaint for civil forfeiture against the Logan premises pursuant to 21 U.S.C. § 881. A warrant of arrest in rem was issued directing the United States Marshal to arrest the premises. The Marshal secured the property and took exclusive possession of it.

On November 15, 1984, the grand jury handed down an indictment charging all three defendants with conspiracy to manufacture and distribute methamphetamine in violation of 21 U.S.C. § 846. Later, on January 7, 1985, agents of the Federal Bureau of Investigation entered the detached laboratory on the Logan premises to remove additional evidence. Since the structure had been in the exclusive possession and control of the government since the November 2, 1984 search, the agents did not secure a search warrant. They seized a fan cover and gathered paint scrapings. At trial, a chemist testified as to the presence of methamphetamine on these items.

On September 5, 1985, the grand jury handed down a superceding indictment. Count I charged the three defendants with conspiracy to manufacture and distribute methamphetamine from October 1982 to November 2, 1984 in violation of 21 U.S.C. § 846. Count II charged the defendants with manufacturing and distributing methamphetamine from November 1983 to November 2, 1984 in violation of 21 U.S.C. § 841(a)(1).

After a jury trial, Logan was convicted on Counts I and II of the superceding indictment; Richard and Carol Calabrese were convicted on Count I. The district court sentenced Logan to consecutive fifteen year terms on Counts I and II. The court sentenced Richard Calabrese to fifteen years on Count I and Carol Calabrese to three years on Count I. All three defendants appeal from their convictions.

### II.

#### A.

The district court sentenced Logan to consecutive fifteen year sentences on Counts I and II of the superceding indictment; it sentenced Richard Calabrese to fifteen years on Count I of the indictment. The court found that the increased penalties of the Comprehensive Crime Control Act of 1984 (the Act), 21 U.S.C. § 841(b)(1)(B) (Supp. III 1985), applied. The Act became effective on October 12, 1984 and increased the maximum sentences

on Counts I and II of the indictment from five years to fifteen years. The defendants claim that the application of the increased penalties contained in the Act violated the ex post facto clause of article I, section 9 of the Constitution. Whether the sentences imposed were "illegal" is a question of law which we review de novo. *United States v. Fowler*, 794 F.2d 1446, 1449 (9th Cir.1986), *cert. denied,* ——— U.S. ———, 107 S.Ct. 1309, 94 L.Ed.2d 153 (1987).

■ Logan failed to raise the ex post facto issue before the district court. Logan claims that the district court's failure to consider the issue was "plain error" under Federal Rule of Criminal Procedure 52(b) and, therefore, that we should consider the issue for the first time on appeal. We disagree. Count I of the indictment charged Logan with conspiracy to manufacture and distribute methamphetamine from October 1982 to November 2, 1984; Count II of the indictment charged Logan with manufacturing and distributing methamphetamine from November 1983 to November 2, 1984. A jury's verdict represents a finding that a crime was committed as alleged in the indictment. *Leyvas v. United States*, 371 F.2d 714, 717 (9th Cir. 1967). When it convicted Logan on Counts I and II, the jury found that the crimes took place until November 2, 1984. Therefore, it was not "plain error" for the district court to apply the increased penalties of the Act which became effective on October 12, 1984. Since Logan failed to raise the ex post facto issue below, we will not consider it on appeal.

■ Richard Calabrese did raise the ex post facto issue below. The district court, in a published opinion, rejected Calabrese's argument. *See United States v. Calabrese*, 624 F.Supp. 1134 (D.Mont.1986). Calabrese contends that there is not substantial evidence to support the jury's finding that he conspired to manufacture and distribute methamphetamine between October 12, 1984, the effective date of the Act, and November 2, 1984. *See Leyvas*, 371 F.2d at 717–18. This contention is meritless. During the November 2, 1984 search of the Calabrese residence, federal agents found

several items which indicate that the conspiracy was still continuing: firearms, false identification papers for Richard and Carol Calabrese, large quantities of cash hidden on the premises, notes in the handwriting of Carol Calabrese relating to chemicals needed to manufacture methamphetamine, and tax notes for all three defendants in the handwriting of Carol Calabrese. Since there is substantial evidence to support the jury's finding that the conspiracy continued until November 2, 1984, we reject Richard Calabrese's ex post facto argument.

### B.

■ Logan argues that consecutive sentences imposed on the conspiracy count and the manufacturing and distribution count subjected him to double jeopardy. He acknowledges Ninth Circuit case law which holds that conspiracy and the completed substantive offense are separate crimes for which separate sentences can be imposed. *United States v. Batimana*, 623 F.2d 1366, 1370 (9th Cir.), *cert. denied*, 449 U.S. 1038, 101 S.Ct. 617, 66 L.Ed.2d 500 (1980). Logan argues that this court should create an exception to this well-established rule where the proof required for the conspiracy and the substantive offense is identical. *See, e.g., United States v. Sutton*, 642 F.2d 1001, 1040 (6th Cir.1980) (en banc), *cert. denied*, 453 U.S. 912, 101 S.Ct. 3143, 69 L.Ed.2d 995 (1981). This court has rejected the Sixth Circuit's approach on several occasions. *See, e.g., United States v. Rubalcaba*, 811 F.2d 491, 495 (9th Cir.), *cert. denied,* ——— U.S. ———, 108 S.Ct. 107 (1987). Accordingly, we reject Logan's double jeopardy argument.

### III.

### A.

■ Logan argues that Count II of the superceding indictment fails to state an offense and is unconstitutionally vague, ambiguous, and duplicitous. He failed to make this argument at the district court level. Logan contends that the failure of the district court to consider the issue amounted to "plain error" under Federal

Rule of Criminal Procedure 52(b). He fails to support this proposition by reason or authority. Therefore, except to the extent that Count II fails to state an offense, Logan has waived the right to object to defects in the superceding indictment. Fed.R.Crim.P. 12(b)(2); *United States v. Gulino*, 588 F.2d 256, 258 (9th Cir.1978).

Logan claims that Count II of the superceding indictment fails to state an offense in that it charges him with *two* offenses, namely, manufacturing *and* distributing methamphetamine. This argument is frivolous.

## B.

■ Logan also asserts that the district court erred in denying his motion for a bill of particulars. The district court found that the superceding indictment was sufficiently precise to afford Logan an opportunity to defend himself. We review the district court's denial of Logan's motion for a bill of particulars for an abuse of discretion. *United States v. Mitchell*, 744 F.2d 701, 705 (9th Cir.1984).

■ According to Logan, a bill of particulars was necessary to tell him *when* he committed the acts in question. This was necessary so that the district court could determine whether the increased penalties of the Comprehensive Crime Control Act of 1984 applied. *See* Section II.A above. In spite of the fact that the superceding indictment indicated that the maximum penalty on Count II was fifteen years, Logan failed to press this argument at the district court level. Therefore, we will not consider it on appeal.

■ Logan also claims that a bill of particulars was necessary to avoid the unfair surprise of having Rose Ann Perry, a witness previously unidentified by the government, testify at trial. *See Mitchell*, 744 F.2d at 705 (one of the purposes of a bill of particulars is to minimize the danger of unfair surprise at trial). Logan fails to specify how he was prejudiced by the surprise. Both he and Arthur Perry, Rose Ann Perry's ex-husband, testified that she was not telling the truth. The mere fact that the jury chose to believe her testimony rather than the testimony of Logan and Arthur Perry does not demonstrate unfair surprise. The district court did not abuse its discretion in denying Logan's motion for a bill of particulars.

## IV.

■ All three defendants claim that they were denied their rights to speedy trials under the Speedy Trial Act, 18 U.S.C. §§ 3161–3174. None of the defendants challenges the calculation of speedy trial time by the district court. We review factual findings concerning the Speedy Trial Act for clear error and questions of law concerning the application of the Act de novo. *United States v. Feldman*, 788 F.2d 544, 547–48 (9th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987).

■ Logan advances three arguments in support of his claim that his Speedy Trial Act rights were violated. First, Logan argues that the district court erred when it found that the speedy trial exclusions applicable to his co-defendants applied to him since he had not requested a severance. This contention is meritless. Title 18 U.S.C. § 3161(h)(7) specifically excludes "[a] reasonable period of delay when the defendant is joined for trial with a co-defendant as to whom the time for trial has not run and no motion for severance has been granted." *See also United States v. Van Brandy*, 726 F.2d 548, 551 (9th Cir.) (delay attributable to one defendant is attributable to his co-defendant), *cert. denied*, 469 U.S. 839, 105 S.Ct. 139, 83 L.Ed.2d 79 (1984). Second, Logan claims that the indefinite continuance granted by the district court from January 5, 1985 until July 16, 1985 was unreasonable, particularly since he did not request the continuance. The court below made a specific finding that the continuance was necessary to allow the defense the opportunity to investigate the case and, hence, that the time was excludable pursuant to 18 U.S.C. § 3161(h)(8)(A). Logan does not challenge this finding. Finally, Logan asserts that after the superceding indictment was filed,

he was not served with a detainer as required by 18 U.S.C. § 3161(j)(1). Although the government did not serve Logan with a detainer, it did promptly undertake to obtain his presence for trial. Thus, the government fulfilled its obligations under 18 U.S.C. § 3161(j)(1)(A).

Richard Calabrese argues that he had an absolute right to trial within 90 days of the commencement of detention since he was incarcerated pending trial without bail. *See* 18 U.S.C. § 3164. This argument is meritless; 18 U.S.C. § 3164(b) incorporates the exclusions contained in 18 U.S.C. § 3161(h).

### V.

All three defendants argue that the evidence was not sufficient to sustain their convictions. On appeal, the relevant inquiry is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Spinney,* 795 F.2d 1410, 1414 (9th Cir. 1986).

■ With respect to Count I, the conspiracy count, the defendants argue that mere familial relationship is insufficient to sustain their convictions. Undoubtedly, this is a correct proposition. However, "[a] defendant's knowledge of and participation in a conspiracy may be inferred from circumstantial evidence and from evidence of the defendant's actions. Acts which seem otherwise innocent, when viewed in the context of the surrounding circumstances, may justify an inference of complicity." *Batimana,* 623 F.2d at 1368 (citations omitted). When viewed in this light, the evidence in the record is more than sufficient to sustain the jury's verdicts as to Count I. While in jail, Logan told Dale Chelini that he and Richard Calabrese were manufacturing methamphetamine. In addition, Richard Calabrese was to be notified first in the event that the burglar alarm in the detached structure at the Logan premises

(the methamphetamine laboratory) was activated. During the November 2, 1984 searches, federal agents found tax notes for all three defendants in the handwriting of Carol Calabrese. They also found notes in the handwriting of Carol Calabrese relating to the chemicals needed to manufacture methamphetamine, and large quantities of hidden cash.

■ Logan also argues that the evidence is insufficient to sustain his conviction on Count II for manufacturing and distributing methamphetamine. At trial, there was testimony that the detached structure at the Logan premises was outfitted to manufacture methamphetamine. Moreover, methamphetamine was found in the structure. As noted above, Dale Chelini also testified that Logan told him that he and Richard Calabrese were manufacturing methamphetamine.

The evidence in this case is sufficient to sustain the convictions. The defendants' arguments to the contrary are without merit.

### VI.

#### A.

■ All three defendants argue that there was no probable cause to support the search warrants executed on November 2, 1984 at the Calabrese premises, the Logan premises, and Sheridan Towing. A magistrate's task in issuing a search warrant is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). On appeal, "the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Id.* at 238–39, 103 S.Ct.

at 2332, (citation omitted); *see also United States v. Peacock,* 761 F.2d 1313, 1315 (9th Cir.), *cert. denied,* 474 U.S. 847, 106 S.Ct. 139, 88 L.Ed.2d 114 (1985). In doubtful cases, the reviewing court should give preference to the validity of the warrant. *Peacock,* 761 F.2d at 1315.

■ The magistrate in this case issued the search warrants on the basis of the written affidavit of Bernard F. Hubley, a special agent of the Federal Bureau of Investigation. Attached to Hubley's affidavit, and expressly incorporated into that document, were affidavits of two Drug Enforcement Administration (DEA) agents. We find that the totality of circumstances as set forth in the affidavits provided the magistrate with a substantial basis for determining that probable cause existed.

The affidavits of the two DEA agents gave detailed information regarding the involvement of several persons, particularly an individual named Dominic Esposito, in the manufacture of methamphetamine. The officers had investigated an explosion at an illicit drug laboratory outside Ramona, California, in the spring of 1984. A search of that site revealed large quantities of methamphetamine in addition to chemicals and equipment needed to manufacture controlled substances.

Hubley's affidavit incorporated these prior affidavits. Hubley connected the defendants in this case to the individuals named in the affidavits of the DEA agents in several ways. Hubley stated that Richard Calabrese was a former employee of Esposito in California. Hubley's affidavit sets forth extensive telephone traffic between the defendants in this case and those persons in California suspected of involvement in the manufacture and distribution of controlled substances. The affidavit links the defendants to Esposito and other known and suspected narcotics traffickers through real estate transactions. Hubley noted that the defendants were making cash expenditures far exceeding their legitimate, demonstrable incomes. His affidavit specifically points out that the detached structure on the Logan premises was remodeled in a manner consistent with the establishment of a clandestine laboratory. The affidavit further describes significant increases in electrical usage on the Calabrese and Logan premises and the defendants' attempts to circumvent the electrical metering systems to the premises.

Hubley also stated that a county law enforcement officer noticed a peculiar odor near the detached structure on the Logan premises. The officer associated the odor with the production of methamphetamine through his experience and training. Hubley pointed out the close proximity of the Calabrese and Logan properties to one another. He also stated that the purchases of these rather secluded properties were made using a common middleman. Finally, Hubley stated that two informants indicated to him that Logan had furnished a controlled substance, cocaine, to them.

This recitation of the facts set forth in Hubley's affidavit is by no means all-inclusive. These alleged facts, however, provided the magistrate with a substantial basis from which to conclude that the particular evidence sought by the government would be found at the particular places described in the affidavit for the search warrants.

B.

On January 7, 1985, agents of the Federal Bureau of Investigation entered the detached laboratory on the Logan premises without a warrant to remove additional evidence. The laboratory had been under the exclusive possession and control of the government since the November 2, 1984 search. The agents removed evidence of drug-related activity which had previously been observed but not taken out of the structure. The defendants claim that this warrantless search violated the fourth amendment, and, hence, that the evidence seized during the search, paint scrapings and a fan cover, should have been suppressed. The government, on the other hand, claims that a warrant was not neces-

sary since it had maintained exclusive possession and control of the detached laboratory since the time of the first search. We agree that the January 7, 1985 search did not violate the defendants' reasonable expectations of privacy.

■ First, the detached structure was not within the curtilage of Logan's home, and, thus, the special fourth amendment protections given to the home are inapposite. The defendants cite *United States v. Broadhurst*, 612 F.Supp. 777 (E.D.Cal. 1985), and *United States v. Dunn*, 782 F.2d 1226 (5th Cir.1986), for the proposition that the detached structure was within the curtilage. Both of these cases have been reversed on appeal. *See United States v. Broadhurst*, 805 F.2d 849 (9th Cir.1986); *United States v. Dunn*, —— U.S. ——, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987).

The record in this case does not support the defendants' contention that the detached structure was within the curtilage. The Supreme Court recently noted that the primary focus in determining whether a particular area lies within the curtilage is "whether the area in question harbors those intimate activities associated with domestic life and the privacies of the home." *Dunn*, 107 S.Ct. at 1139 n. 4. The Court set forth four factors to aid in this determination. *Id.* at 1139. The Court was careful to note, however, that "these factors are useful analytical tools only to the degree that, in any given case, they bear upon the centrally relevant consideration— whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *Id.*

In this case, we have no doubt that the detached structure did not harbor the intimate activities associated with domestic life and the privacies of the home. The structure was located some fifty feet from the Logan residence. *See Dunn*, 107 S.Ct. at 1139 (factor in determining whether a particular area is within the curtilage is the proximity of the area to the home). In addition, the residence had two other at-

*tached* garages. Most significant, however, is the fact that "law enforcement officials possessed objective data indicating that the [detached structure] was not being used for the intimate activities of the home." *Id.* at 1140. After the November 2, 1984 search of the detached structure, federal agents knew that the structure was being used to manufacture methamphetamine and not for domestic activities. As discussed above, the November 2, 1984 search did not violate the fourth amendment. *See* Section VI.A.

■ Second, the government maintained exclusive possession and control of the detached laboratory during the entire period between the lawful November 2, 1984 search and the January 7, 1985 search. The defendants do not assert that this possession was anything but lawful. Under there circumstances, the government was not required to obtain a warrant for the January 7, 1985 search. *See United States v. Johnson*, 820 F.2d 1065, 1072 (9th Cir.1987) ("'once an item in an individual's possession has been lawfully seized and searched, subsequent searches of that item, so long as it remains in the legitimate uninterrupted possession of the police, may be conducted without a warrant.'"), quoting *United States v. Burnette*, 698 F.2d 1038, 1049 (9th Cir.), *cert. denied*, 461 U.S. 936, 103 S.Ct. 2106, 77 L.Ed.2d 312 (1983).

## VII.

For the reasons stated above, the convictions are AFFIRMED.