996 F.2d 1228
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Richard ALVAREZ, Defendant-Appellant.
 No. 92-10009.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 10, 1993.
Decided June 30, 1993.
 
 1
 Before: POOLE, BOOCHEVER and FERNANDEZ, Circuit Judges
 
 
 2
 MEMORANDUM*
 
 
 3
 Richard Alvarez appeals his convictions for conspiracy, receipt of gifts for procuring loans, 18 U.S.C. § 215(a),[1] and bank fraud, 18 U.S.C. § 1344, arising from his participation in obtaining loans from his employer for codefendant John Novak. We affirm.
 
 DISCUSSION
 
 4
 A. Constitutional Challenges.
 
 
 5
 Section 215(a) of the Bank Bribery Act makes it a crime for a bank officer to directly or indirectly receive "anything of value, for himself ... for or in connection with any transaction or business of such financial institution." Alvarez contends that § 215 is unconstitutionally overbroad and vague.
 
 
 6
 1. Overbreadth.
 
 
 7
 In a facial overbreadth challenge, the court must first determine whether the law "reaches a substantial amount of constitutionally protected conduct." Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982) (Flipside ). A statute is not overbroad simply because there is a possibility that it reaches legitimate conduct. When the statute covers speech and conduct, the overbreadth must be real and substantial, compared to the statute's legitimate sweep. United States v. Stansell, 847 F.2d 609, 613, 615 (9th Cir.1988).
 
 
 8
 Section 215 does not infringe First Amendment rights. It does not prohibit political, social or symbolic speech, and the overbreadth doctrine does not apply to commercial speech. See Flipside, 455 U.S. at 496-97, 102 S.Ct. at 1192; United States v. Austin, 902 F.2d 743, 744-45 (9th Cir.), cert. denied, 498 U.S. 874, 111 S.Ct. 200, 112 L.Ed.2d 161 (1990); United States v. Hutson, 843 F.2d 1232, 1235 (9th Cir.1988). The section does not prohibit speech, except that of asking or demanding personal payment in connection with a bank transaction. That is no more deserving of protection than an extortionate threat. See Hutson, 843 F.2d at 1235.
 
 
 9
 Section 215 does not criminalize substantial legitimate conduct. Although the statute conceivably reaches some innocent conduct, the threat of prosecution for that conduct is insignificant. United States v. Wicker, 933 F.2d 284, 287-88 (5th Cir.), cert. denied, 112 S.Ct. 419, 116 L.Ed.2d 439 (1991); see United States v. Humble, 714 F.Supp. 794, 795-97 (E.D.La.1989). In any event, the statute is not overbroad as applied to Alvarez. The jury found that Alvarez received money in exchange for his assistance in obtaining loans. This is precisely the type of conduct that lies at the heart of the activities § 215 was enacted to prohibit. See Ryan v. United States, 278 F.2d 836, 838 (9th Cir.1960) (applying pre-1984 version of § 215).
 
 
 10
 2. Vagueness.
 
 
 11
 Because the First Amendment is not involved, Alvarez may only challenge § 215 as applied to his conduct. See, e.g., Flipside, 455 U.S. at 497-504, 102 S.Ct. at 1193-96. A statute is impermissibly vague if it fails to sufficiently define the offense so that an ordinary person can understand what is prohibited, and it provides no standards for enforcement. See, e.g., Wicker, 933 F.2d at 288.
 
 
 12
 Alvarez says that he believed that his conduct was not covered by § 215 because he thought he was getting paid for a prior debt. But the statute is not judged by Alvarez's version of the facts. The jury found that Alvarez received money "for or in connection with" the Novak loans from CSA. Certainly any ordinary person could plainly see that the statute was designed to prohibit kickback schemes of the type Alvarez was said to have engaged in, and the statute does not truly lend itself to discriminatory enforcement. See, e.g., Stansell, 847 F.2d at 615-16; United States v. Kelly, 973 F.2d 1145, 1152 (5th Cir.1992); Wicker, 933 F.2d at 288; Humble, 714 F.Supp. at 797-98.
 
 
 13
 B. Elements of Section 215 Offense.
 
 
 14
 Alvarez claims that the "except as provided by law" clause in § 215 means that the government must plead and prove, as an element of the offense, that the payment received by Alvarez was not authorized by law. The government contends that it refers to an affirmative defense. We agree with the government.
 
 
 15
 It is the general rule that an indictment " 'need not negative the matter of an exception made by a proviso or other distinct clause....' " United States v. Hester, 719 F.2d 1041, 1042 (9th Cir.1983) (citation omitted).
 
 
 16
 United States v. Evans, 572 F.2d 455, 480-82 (5th Cir.), cert. denied, 439 U.S. 870, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978), and United States v. Brewster, 506 F.2d 62, 68, 71-72, 82 (D.C.Cir.1974), which construed proviso language in a prior version of the illegal gratuity statute, are not to the contrary. Neither decision places on the government the burden of pleading or proving that the gratuity was not authorized by law. In each case, it was sufficient for the government to prove that money was accepted with knowledge that it was given for the purpose proscribed in the statute, i.e., for an official act or because of the official's position. Evans, 572 F.2d at 482; Brewster, 506 F.2d at 82; see United States v. Campbell, 684 F.2d 141, 149-50 (D.C.Cir.1982).
 
 
 17
 Moreover, it makes sense to place the burden of producing evidence on the defendant. The class of payments that an institution's officer can receive for and in connection with a loan is exceedingly small to say the least. With the exception of salary payments, see 18 U.S.C. § 215(d), an officer is generally prohibited from receiving "any fee or other compensation of any kind in connection with the procurement of any loan from such institution." 12 C.F.R. § 563.40(a) (1984). If a defendant believes he has found some unique or arcane exception to the general rule, it is "far more manageable for the defendant to shoulder the burden of producing evidence" to that effect. Hester, 719 F.2d at 1043. In short, it was sufficient for the government to plead that Alvarez received the payment with knowledge of the proscribed purpose--that the payment was for or in connection with the loans. The district court did not err in refusing to dismiss the indictment for failing to allege that the payment was not authorized by law.
 
 
 18
 C. Ex Post Facto.
 
 
 19
 The indictment charged Alvarez with execution of a scheme to commit bank fraud, commencing from an unknown date until January 8, 1985, and with conspiracy to commit bank fraud, embezzlement and receipt of gifts for procuring loans, commencing from an unknown date until August 26, 1985. The bank fraud statute, 18 U.S.C. § 1344, was enacted on October 12, 1984. Alvarez contends that because the jury could have convicted him of bank fraud and conspiracy to commit bank fraud based on acts committed prior to October 12, 1984, the convictions violate the ex post facto clause. U.S. Const. art. I, § 9, cl. 3.
 
 
 20
 Alvarez failed to raise this issue below and has waived any error on this ground. See United States v. Calabrese, 825 F.2d 1342, 1346 (9th Cir.1987). The verdict constitutes a finding that the bank fraud scheme was executed up until January 8, 1985. See id. Although one loan closed prior to October 1984, the other commitment was not issued until November 1984. Thus, there were some acts committed after the enactment of § 1344. Alvarez's convictions of bank fraud and conspiracy do not violate the ex post facto clause.
 
 
 21
 D. Evidence of Prior Conduct.
 
 
 22
 The government introduced portions of Alvarez's deposition testimony from a civil lawsuit, in which Alvarez disclosed that while working for Homestead Savings he was involved in maintaining two sets of loan documentation. One set was for review by bank regulators; the other evidenced the true substance of the transactions--100% financing for real estate developments, which violated banking regulations. Alvarez did not object.
 
 
 23
 Alvarez's knowledge of the false vouchers and the return of Novak's downpayment was a disputed issue. The Homestead transactions were similar in form and substance to the CSA transaction Alvarez put together for Novak. Alvarez's previous deposition testimony tended to show Alvarez's intent to defraud CSA, an element of the bank fraud count, and to show knowledge, preparation, and absence of mistake or accident. See Fed.R.Evid. 404(b); United States v. Faust, 850 F.2d 575, 583-85 (9th Cir.1988); United States v. Jenkins, 785 F.2d 1387, 1395-96 (9th Cir.), cert. denied, 479 U.S. 855, 107 S.Ct. 192, 93 L.Ed.2d 125 (1986). The admission of this evidence was not plain error. See United States v. Segal, 852 F.2d 1152, 1155 (9th Cir.1988).
 
 
 24
 E. Jury Instructions.
 
 
 25
 1. The Section 215 Offense.
 
 
 26
 Alvarez did not object to the form of the instruction on the § 215 offense. As discussed in Section B, supra, the government need not plead and prove that the payment Alvarez received was not authorized by law. Rather, Alvarez was required to raise the issue as a defense. He did not. The jury instruction was proper as to this element.
 
 
 27
 The instruction is somewhat ambiguous with respect to the element of intent. The government must prove a guilty mind as well as a wrongful deed. United States v. Aguon, 851 F.2d 1158, 1168-69 (9th Cir.1988) (en banc) (plain error in jury instructions which permitted extortion conviction based on finding that defendant simply received money to which she was not entitled), overruled on other grounds, Evans v. United States, 112 S.Ct. 1881, 119 L.Ed.2d 57 (1992); cf. United States v. Egan, 860 F.2d 904, 908-09 (9th Cir.1988) (no plain error when jury instructed that it must find defendant caused people to give him money by threatening to take or withhold official action, since such finding must include mens rea).
 
 
 28
 In this case, the jury was instructed that it could convict if it found that Alvarez knowingly received money and that "such payment was for and in connection [with] a transaction or business of [CSA]." The instruction is ambiguous because it does not clearly state who must know that the payment was in connection with CSA loans. Alvarez admitted receiving money from Novak; his defense was that he did not know that the payment was for the CSA loans, i.e., he had no guilty knowledge. Considered in a vacuum one can argue that the jury could have convicted Alvarez if it found that Novak knew the payment was for the CSA loans, but that Alvarez understood that the payment was for a prior debt.
 
 
 29
 Nevertheless, it is clear from the presentation of the case and the closing arguments that the jury was asked to determine whether Alvarez knew that the money was a kickback for obtaining the CSA loans for Novak. Thus, it is highly unlikely that the error affected Alvarez's substantial rights and "had an unfair prejudicial impact on the jury's deliberations." United States v. Hoac, No. 91-50193, slip op. 2809, 2828-29 (9th Cir. Mar. 26, 1993) (citation and internal quotation omitted).
 
 
 30
 2. Good Faith.
 
 
 31
 Alvarez did not object to the failure to give his requested good faith defense instruction. He therefore failed to preserve his claim of error.
 
 
 32
 Insofar as it relates to the bank fraud count, the failure to give a good faith instruction was not error. A defendant is not entitled to a good faith instruction when the court adequately instructs on specific intent. See, e.g., United States v. Rushton, 963 F.2d 272, 274 (9th Cir.1992); United States v. Gering, 716 F.2d 615, 622 (9th Cir.1983).
 
 
 33
 With respect to the § 215 count, it must be acknowledged that the district court's failure to instruct on good faith overlooked an opportunity to clear up any ambiguity regarding intent. See United States v. Mason, 902 F.2d 1434, 1438 (9th Cir.1990). However, based on the posture of the case as it was sent to the jury, it is highly unlikely that the failure to give the good faith instruction "so affected the jury's ability to consider the totality of the evidence fairly that it tainted the verdict and deprived [Alvarez] of a fair trial." Hoac, slip op. at 2828 (citation and internal quotation omitted).
 
 
 34
 3. Character.
 
 
 35
 The district court refused Alvarez's requested instruction on his good character for truthfulness and honesty on the ground that there was no evidentiary basis for it. The district court's stated reason was incorrect because there was some testimony about Alvarez's character. However, the requested instruction was not a theory of the defense instruction and, given its general nature, it was adequately covered in other parts of the charge. Also, the court said that Alvarez could argue the issue to the jury--he chose not to do so. It may have been better if the court had given the instruction, but the failure to do so was harmless error at most.
 
 
 36
 F. Ineffective Assistance of Counsel.
 
 
 37
 Alvarez claims that defense counsel rendered ineffective assistance by allegedly conceding his guilt to the jury in closing argument. The import of the three sentences to which Alvarez objects is not entirely clear, but it is most probable that counsel's point was that if the jury found a kickback, it must convict. A different interpretation would make the statements inconsistent with the remainder of counsel's argument. Certainly they do not rise to the level of abandonment of a client which warranted reversal in United States v. Swanson, 943 F.2d 1070, 1072 (9th Cir.1991). Nor has Alvarez demonstrated that the objectionable sentences constituted deficient performance, or that he was prejudiced. See id. (citing Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).
 
 
 38
 G. Prosecutorial Misconduct.
 
 
 39
 Finally, the prosecutor's comment in closing argument, that Alvarez's conduct could have destroyed the bank, was based on evidence. Thus, while the actual effect on the institution is beside the point, the comment does not constitute plain error and does not warrant reversal of the conviction. See United States v. Molina, 934 F.2d 1440, 1444 (9th Cir.1991).
 
 
 40
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 References to § 215 are to the version of 18 U.S.C. § 215 effective October 12, 1984. Continuing Appropriations, 1985--Comprehensive Crime Control Act of 1984, Pub.L. No. 473, Title II, § 1107, 98 Stat. 2145-46 (1984)