No. 20-0024, *Frank A. v. Donnie Ames, Superintendent, Mt. Olive Correctional Complex*

**FILED**
**November 19, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Armstead, Justice, concurring, in part, and dissenting,

in part, joined by Chief Justice Jenkins:

I concur with much of the majority opinion.  I dissent in part, however, because I do not believe that ex post facto principles bar application of the post-incarceration supervision statute, West Virginia Code § 62-12-26 (eff. June 6, 2003), to Frank A.'s conviction.[1]  I maintain this position because I believe the evidence reflects that at least a portion of the criminal conduct for which he was indicted and convicted took place after the statute became effective.

This is not the first time Frank A. has been before this Court.  He appealed his underlying criminal conviction in 2014.  *State v. Frank A.*, No. 14-0439, 2015 WL 867912 (W. Va. Feb. 27, 2015) (memorandum decision).  In affirming his conviction, we

---

[1] When the post-incarceration supervision statute was first enacted, it provided as follows:

> (a) Notwithstanding any provision of this code to the contrary, any defendant convicted after the effective date of this section of a violation of section twelve, article eight, chapter sixty-one of this code or a felony violation of the provisions of article eight-b, eight-c or eight-d of said chapter may, as part of the sentence imposed at final disposition, be required to serve, in addition to any other penalty or condition imposed by the court, *a period of supervised release of up to fifty years.* The period of supervised release imposed by the provisions of this section shall begin upon the expiration of any period of probation, the expiration of any sentence of incarceration or the expiration of any period of parole supervision imposed or required of the person so convicted, whichever expires later. . . .

2003 W. Va. Acts 524, 525 (S.B. 654) (emphasis added).

noted that he had been convicted on counts nine, ten, eleven, and twelve of the indictment, all of which pertained to sexual abuse perpetrated against A.A.  *Id.*, 2015 WL 867912, at *2.  Significantly, we described A.A.'s trial testimony this way:

> A.A. testified that her father lived with her family *from 2003 to 2004.  Over the course of those two years, when A.A. was between the ages of thirteen and fifteen*, petitioner repeatedly attempted to sexually assault her by dragging her into the laundry room and fondling her.  A.A. testified that she fought back.  When she was fifteen, A.A. told her mother about the assaults.  Her mother immediately took her to a police station and filed charges.

*Id.*, 2015 WL 867912, at *1 (emphasis added).  This description accords with the timeframe charged in the indictment, which accuses Frank A. of committing his crimes "on or about and between the ___ day of January, 2003, and the ___ day of December, 2004, in Harrison County, West Virginia[.]"  This description also accords with the timeframe established by the jury's verdict, which found Frank A. "guilty . . . *as charged in* Count[s nine, ten, eleven, and twelve] of the indictment."  (Emphasis added.)  "A jury's verdict represents a finding that a crime was committed as alleged in the indictment."  *United States v. Calabrese*, 825 F.2d 1342, 1346 (9th Cir. 1987).

Despite our own prior findings and the jury's verdict, the majority finds that "the *only reasonable inference* which may be drawn from the evidence is that [the incidents of abuse] occurred *prior to January, 2003*."  (Emphasis added.)  The majority reaches this conclusion by seizing on the victim's testimony that the incidents happened in a trailer in Enterprise, West Virginia, and the investigating officer's representation that A.A. and her family lived at Maple View Apartments in Clarksburg, West Virginia, for 2003.  However,

2

A.A. also testified that she was living *in Enterprise in 2003*, and there is no reason to assume that the jury attached more credibility to the investigating officer's testimony than A.A.'s testimony regarding where the incidents occurred. Both places are located in Harrison County.

Instead of weighing contradictory testimony, I believe we must begin by assuming the jury's finding is correct. "[A]ppellate review is not a device for this Court to replace a jury's finding with our own conclusion. On review, we will not weigh evidence or determine credibility. Credibility determinations are for a jury and not an appellate court." *State v. Guthrie*, 194 W. Va. 657, 669, 461 S.E.2d 163, 175 (1995) (footnote omitted). As *Guthrie* emphasized, "[i]t is for the jury to decide which witnesses to believe or disbelieve. Once the jury has spoken, this Court may not review the credibility of the witnesses." *Id.*, 194 W. Va. at 669 n.9, 461 S.E.2d at 175 n.9.

As Frank A. argues, deference to the jury verdict means assuming that "on two discrete instances occurring sometime between January of 2003 and December of 2004, [Frank A.] sexually abused A.A."[2] Because the post-incarceration supervision statute became effective on June 6, 2003, the question becomes whether the evidence reflects that at least part of the criminal conduct for which he was convicted under the indictment took place after the statute became effective. I believe that it does.

---

[2] The jury convicted Frank A. of two counts, each, of sexual abuse in the first degree (counts nine and eleven) and sexual abuse by a parent, guardian, or custodian (counts ten and twelve).

A.A. testified that the abuse began when she was thirteen and continued until she was fifteen. Because Frank A. denied the abuse altogether, and because the jury found him guilty, he cannot challenge this testimony. *Cf. State v. Larry A.H.*, 230 W. Va. 709, 713, 742 S.E.2d 125, 129 (2013) (per curiam) (finding no prejudice when indictment was amended to reflect trial evidence because "defense was simply that [appellant] did not commit the crimes"). There is no dispute that A.A. was born on May 18, 1988. This means that she became a thirteen-year-old on May 18, 2001, a fourteen-year-old on May 18, 2002, and a fifteen-year-old on May 18, 2003. It also means that she remained a fifteen-year-old until May 17, 2004.

These milestones become significant when we consider Frank A.'s own testimony regarding his living arrangements in the winter and spring of 2003. According to his trial testimony, he lived in Maple View Apartments in January and February 2003. When he and his wife separated, he went to live in the Parsons Hotel, where he remained during March, April, and *May* 2003, when A.A. turned fifteen. According to Frank A., he did not return to Maple View Apartments until June 2003.

It is not clear what day in June Frank A. returned to Maple View Apartments, but he was not there for many days before he and his family moved out. He testified,

> [A]fter I got back with my wife in June 2003, we moved from the Maple View Apartments. I mean, we just got this

4

apartment in Grafton called the Sunset Terrace.[3]  I mean, we got it right off the bat.

> And (inaudible) drove up there to Grafton and they just gave us the apartment because they had one available.  I mean, and then they said it would be *a few days* before we could move in so I went back to Maple View (inaudible) *and we moved out June 9th.*[4]

(Emphasis added.)  Frank A. went on to testify that the family subsequently "moved back to Enterprise where we used to live" and that he was living in Enterprise when he was arrested in August 2003.  As noted above, the post-incarceration supervision statute became effective on June 6, 2003, which was at or about the time Frank A. returned to the home and after A.A. had turned fifteen.  As the majority points out, A.A. disclosed the abuse on or about August 3, 2003.  There is no need to track Frank A.' movements after this, because A.A. testified that there was no subsequent abuse.

As we noted in *Frank A.*, A.A. testified to *repeated* abuse and abuse that lasted until she was fifteen.  2015 WL 867912, at *1 ("[W]hen A.A. was between the ages of thirteen and fifteen, petitioner repeatedly attempted to sexually assault her by dragging her into the laundry room and fondling her.").  From his own testimony, it is clear that Frank A. was living with the family in Harrison County in January and February 2003, when A.A. was fourteen.  Since the abuse lasted until A.A. was fifteen, and since Frank A.

---

[3] Frank A.'s sister-in-law's testimony indicates that this apartment was located in Taylor County and that the family remained there "for a little over two months" before returning to Enterprise.

[4] Working backwards, a "few days" before June 9, 2003, is June 7, 2003, which is the day after the post-incarceration supervision statute became effective.

was out of the home in May 2003 when A.A. turned fifteen, the abuse could not have happened until June 2003 when Frank A. returned to the home. From his testimony, we do not know what day in June 2003 Frank A. returned home, but we know that he remained there until at least June 9, 2003, which was three days after the post-incarceration statute became effective. We also know that he returned to Harrison County with his family for a brief time in August 2003.

Accordingly, based on this testimony and timeline, it appears that at least some of the abuse for which Frank A. was convicted happened after the post-incarceration statute became effective on June 6, 2003. When a person commits multiple criminal acts and those criminal acts continue after a statute imposing greater punishment becomes effective, it does not violate ex post facto principles to apply the greater punishment to the criminal acts that occurred after the law changed. *See Calabrese*, 825 F.2d at 1346 ("When it convicted Logan on Counts I [conspiracy to manufacture and distribute methamphetamine] and II [manufacturing and distributing methamphetamine[5]], the jury found that the crimes took place until November 2, 1984. Therefore, it was not 'plain error' for the district court to apply the increased penalties of the Act which became effective on October 12, 1984.").

We denied habeas relief under similar circumstances in *Adkins v. Ames*, No. 19-0229, 2020 WL 2735442 (W. Va. May 26, 2020) (memorandum decision). Mr. Adkins

---

[5] Like sexual abuse, manufacturing and distributing methamphetamine can be committed in a single instance.

had been charged with committing six counts of sexual assault in the first degree and one count of sexual abuse in the first degree between March 2003 and March 2008.[6] *Id.* at *1. He pled guilty to one count of sexual assault in the first degree, *id.*, but he did not designate the date of the offense, *id.* at *2, and the circuit court imposed a term of post-incarceration supervised release, *id.* at *1. On habeas appeal, we refused his request for habeas relief, noting that the petitioner had been charged with "multiple acts of sexual assault over a five-year period" and finding that his "sentence of supervised release does not violate the principle . . . that the statute should not be applied to an individual who committed an enumerated offense prior to the enactment of the statute." *Id.* at *2.[7]

Thus, while I concur in the majority's opinion that Frank A. is entitled to no relief on his other habeas grounds, I respectfully dissent from the majority's opinion because I believe that he is also entitled to no relief on the alleged ground of ex post facto punishment. I have been authorized to state that Chief Justice Jenkins joins me in dissenting from the majority opinion.

---

[6] As noted above, the post-incarceration supervision statute became effective on June 6, 2003.

[7] In *Adkins*, we also noted that the defendant's plea was knowing and voluntary and made with an understanding that he could be sentenced to a term of post-incarceration supervised release, *id.*, but these differences in fact do not undermine the relevant principle to be drawn from our decision in that matter.