[No. A025695. First Dist., Div. Five. Mar. 26, 1985.]

LARRY MORRIS et al., Plaintiffs and Respondents, v.
RUDOLPH A. CASTRO, as Chairperson, etc., Defendant and Appellant.

[No. A027818. First Dist., Div. Five. Mar. 26, 1985.]

In re NATHAN J. ELLIS on Habeas Corpus.

**COUNSEL**

John K. Van de Kamp, Attorney General, Kenneth C. Young, Thomas P. Dove and Paul D. Gifford, Deputy Attorneys General, for Defendant and Appellant.

Donald C. Specter for Plaintiffs and Respondents.

**OPINION**

**LOW, P. J.**—In these consolidated appeals which we refer to the appellants as the People, we consider whether the 1981 and 1982 amendments to Penal

Code section 3041.5, subdivision (b)(2), which changed the requirement for *annual* parole suitability hearings to permit the Board of Prison Terms (board) to schedule hearings every *two or three years,* violate the federal and state proscription against ex post facto laws (U.S. Const., art. I, § 10, cl. 1; Cal. Const., art. 1, § 9) when retrospectively applied to respondent life prisoners.[1]

 We conclude the amended statute is merely a procedural change which does not unconstitutionally disadvantage respondent inmates and does not constitute an ex post facto law.[2] The People appeal from a summary judgment granted in favor of respondents Morris, Youngberg, Morse and Jones and from an order granting respondent Ellis' petition for writ of habeas corpus. In each case, the trial court found that retrospective application of the amended statute constitutes an ex post facto law and ordered the board to hold annual parole suitability hearings for the respondents. We reverse with directions to enter judgment in favor of the People in case No. A025695 and to deny the petition for writ of habeas corpus in case No. A027818.

### I.

All respondents, except for Ellis, were convicted of multiple murders, committed before the enactment of the DSL on July 1, 1977. Respondent Ellis was convicted of robbery, kidnaping for robbery and robbery with a deadly weapon, committed several months after the effective date of the DSL. Each respondent was sentenced to an indeterminate life sentence. At the various parole suitability hearings, each respondent was found unsuitable for parole. Respondents Jones' and Ellis' next hearing dates were set for *two years* pursuant to amended section 3041.5, subdivision (b)(2)(A). (Stats. 1982, ch. 1435, § 1, p. 5474.) Respondents Morris, Youngberg and Morse had their hearing dates scheduled to be held in *three years* pursuant to amended section 3041.5, subdivision (b)(2)(B). (Former § 3041.5, subd. (b), amended by Stats. 1981, ch. 1111, § 4, p. 4339; revised to read in present form by Stats. 1982, ch. 1435, § 1, p. 5474.)

On appeal, the People argue that the amended statute reflects a procedural change only, and does not increase respondents' punishment for crimes they committed nor does it prejudice them in a harsh or arbitrary manner. Respondents urge that the amended statute deprives them of the opportunity

[1]*Morris et al.* v. *Castro* (A025695) involves life prisoners sentenced under the Indeterminate Sentencing Law (ISL) and *In re Ellis* (A027818) involves a life prisoner sentenced under the determinate sentencing law (DSL).
All section references are to the Penal Code unless otherwise indicated.

[2]The Supreme Court granted a hearing in *In re Jackson* (Dec. 21, 1984) 2 Crim. B004125 (hg. granted Feb. 27, 1985), which reached the opposite conclusion.

of an earlier parole release thereby increasing punishment through a longer term of imprisonment. In support of their argument, respondents rely primarily on *Weaver* v. *Graham* (1981) 450 U.S. 24 [67 L.Ed.2d 17, 101 S.Ct. 960], *In re Stanworth* (1982) 33 Cal.3d 176 [187 Cal.Rptr. 713, 654 P.2d 1311] and *In re Griffin* (1965) 63 Cal.2d 757 [48 Cal.Rptr. 183, 408 P.2d 959].)

## II.

On July 27, 1974, respondent Morris shot and killed the victim and then executed two witnesses to that crime, the victim's girlfriend and his 14-year-old brother. Morris was convicted of three counts of first degree murder and sentenced to life imprisonment.

Youngberg was given a life sentence in 1973 for three convictions of first degree murder. After shooting and killing a California Highway Patrol officer who had stopped to assist Youngberg in fixing a flat tire, Youngberg stole the patrol car and crashed it. He then went to a nearby service station and shot and killed the attendant. Following that murder, Youngberg killed a sheriff's officer who had arrived at the scene.

In September 1962, respondent Morse beat his mother and his 12-year-old sister to death with a rock and a baseball bat after an aborted attempt to murder another woman. While Morse was in jail for the retrial of the penalty phase of the murder trial, he killed his cellmate by hanging him from the cell bars.

On November 8, 1975, respondent Jones participated in retaliating against two persons for a drug deal "rip-off." Jones and his friends made an armed raid on the home of the alleged drug thieves. Jones' companion shot one of the alleged thieves in the head and another companion killed the drug thief's girl friend by shooting her repeatedly with a machine gun.

Respondent Ellis is serving a life sentence for his conviction of kidnaping for robbery, robbery with the use of a deadly weapon, and other crimes committed in 1977. On October 7, 1977, Ellis robbed two women in their home. Two nights later, he attempted to rob another woman and stabbed a man who had come to the victim's aid while she was being kidnaped. He had been convicted of burglary, theft, two forcible rapes and robbery in 1967 and 1969.

None of the respondents challenge the board's finding that he is currently unsuitable for parole. They challenge only the constitutional validity of amended section 3041.5 as applied to them.

Commencing July 1, 1977, the DSL required the board to hold annual parole suitability hearings for those inmates whose parole release date had not been set. (Former § 3041.5, subd. (b)(2).) The section was subsequently amended in 1981 and 1982 and presently reads: "(a) At all hearings for the purpose of reviewing a prisoner's parole suitability . . . . [¶] (b)(2) . . . where a parole date has not been set . . . . [¶] [t]he board shall hear each case *annually* thereafter, *except* the board may schedule the next hearing no later than (A) *two years* after any hearing at which parole is denied if the board finds that it is not reasonable to expect that parole would be granted at a hearing during the following year and states the bases for the finding or, (B) *three years* after any hearing at which parole is denied if the prisoner has been convicted, in the same or different proceedings, of more than one offense which involves the taking of a life, and the board finds that it is not reasonable to expect that parole would be granted at a hearing during the following years and states the bases for the finding." (§ 3041.5, italics added.)

### III.

A law is ex post facto " 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.' [Citation.]" (*Weaver* v. *Graham, supra,* 450 U.S. 24, 28 [67 L.Ed.2d 17, 22]; *In re Stanworth* (1982) 33 Cal.3d 176, 180 [187 Cal.Rptr. 783, 654 P.2d 1311].) "[T]wo critical elements must be present for a criminal or penal law to be *ex post facto:* [1] [I]t must be retrospective, that is, it must apply to events occurring before its enactment [fn. omitted], and [2] [I]t must disadvantage the offender affected by it. [Fn. omitted.] [Citations.]" (*Weaver* v. *Graham, supra,* at p. 29 [67 L.Ed.2d at p. 23].) The amended statute is clearly being applied retrospectively to respondents. The only issue is whether the lengthening of the period between respondents' parole suitability hearings increases the respondents' punishment for their crimes after they were committed or prejudicially alters their substantial rights. (See *ibid.,* fn. 12; *People* v. *Smith* (1983) 34 Cal.3d 251, 259-260 [193 Cal.Rptr. 692, 667 P.2d 149].)

The People argue that the amended statute is merely a procedural change that does not impact on the inmates' substantial rights or increases their punishment. We agree. Although there is no ex post facto violation if a change is merely procedural, impairment of a substantial right is not "merely procedural." (*Weaver* v. *Graham, supra,* 450 U.S. at p. 29, fn. 12 [67 L.Ed.2d at p. 23]; *Dobbert* v. *Florida* (1977) 432 U.S. 282, 293 [53 L.Ed.2d 344, 356, 97 S.Ct. 2290].) There is no general rule as to what constitutes an ex post facto infringement of a substantial right. Each case must be decided on its own merits and the outcome will often depend on

matters of degree—"on how substantial is the right that the statute impairs and how significant is that impairment." (*People* v. *Smith, supra,* 34 Cal.3d at p. 260.) Contrary to respondents' argument, the amended statute does not increase their punishment or impair a substantial right.

The amended statute grants the board discretion to defer the otherwise annual suitability hearings for two or three years for certain life inmates when the board finds that it is not reasonably likely that the prisoner would be found suitable for parole within the next year. In other words, the board has determined the prisoner will pose an unreasonable risk of danger to society if released. (Cal. Admin. Code, tit. 15, § 2281, subd. (a).)

This is no arbitrary decision, but is made only after a full hearing and review of the prisoner's past criminal history, the nature of the commitment offense, his attitude towards the current crime, his institutional behavior, rehabilitation and psychological problems, if any, his age, and whether the prisoner has realistic parole plans or has developed a marketable skill. (See Cal. Admin. Code, tit. 15, § 2281, subds. (b), (c), (d); also *In re Duarte* (1983) 143 Cal.App.3d 943, 947-950 [193 Cal.Rptr. 176].) We find that the changes permitted by the amended statute are proper administrative and procedural methods for dealing with respondent life prisoners, who, except for Ellis, have committed multiple murders, and all of whom have demonstrated that they are unsuitable candidates for early release on parole.

In *Weaver* v. *Graham, supra,* 450 U.S. 24, the United States Supreme Court reviewed a Florida statute which altered the availability of postconviction "gain-time" by reducing the number of monthly credits available to inmates. This had the effect of lengthening the period an inmate must spend in prison. (*Id.,* at p. 33 [67 L.Ed.2d at p. 26].) The amended statute, when retrospectively applied to Weaver, obstructed his opportunity for early release and increased the punishment of his crimes committed before the enactment of the statute. (*Id.,* at p. 36 [67 L.Ed.2d at p. 28].) *Weaver* is distinguishable; in *Weaver,* the prisoner was prevented under the new statute from earning an earlier release based on the same institutional behavior that would have entitled him to an early release under the old statute. By contrast, none of the respondents herein was guaranteed he would be found suitable for parole at a date earlier than that permitted under the amended statute. Importantly, there has been no suggestion or evidence that respondents would be found suitable for parole prior to their next scheduled hearings. It thus cannot be said that they were punished more harshly than they would have been under the statute in effect at the time their crimes were committed.

In *In re Stanworth, supra,* 33 Cal.3d 176, also relied upon by respondents, a murderer sentenced to prison under the ISL was found to be entitled

to a release date calculated under either the ISL or the DSL guidelines, whichever were more favorable. The court reasoned that the retrospective application of the DSL release guidelines prejudiced the inmate who was serving a sentence subject to the less onerous ISL release guidelines. The court reasoned that the changes in parole release standards under the DSL, making certain enhancements mandatory, were more than procedural changes, but increased the inmate's punishment in violation of ex post facto principles. (*Id.,* at pp. 182-186.) Unlike the situation in *Stanworth,* the guidelines for determining parole suitability were not changed in this case. Respondents were found to be unsuitable for parole *under the same guidelines in existence at the time of their crimes.* (See generally, *In re Duarte, supra,* 143 Cal.App.3d at pp. 946-948.) Simply, their periodic reviews have been extended because of the serious nature of their crimes and the extreme unlikelihood that they would be found suitable for an earlier release. There has been no substantive change in the rules affecting the board's discretion to award parole.[3]

In *In re Griffin, supra,* 63 Cal.2d 757, a defendant was arrested for selling marijuana. After the crime was committed, but before his conviction, the statute was amended to increase the minimum time he was required to serve before he could be considered for parole. The Supreme Court concluded that the retrospective application of that statute increases the punishment to the prisoner and constitutes an ex post facto law. (*Id.,* at p. 760.) This is different from the present statute, since the minimum length of time the inmate must serve before being *eligible* for parole has not been increased. Only the *frequency* of the parole *suitability* hearings has been affected, and only under circumstances which the board has determined that respondents would not, in all likelihood, have been found suitable for parole during that interim period.

▉ Respondents cannot claim they had a reasonable expectation of an earlier parole release that would rise to the level of a constitutionally protectable interest. "That the state holds out the *possibility* of parole provides no more than a mere hope that the benefit will be obtained. [Citation.]" (*Greenholtz* v. *Nebraska Penal Inmates* (1979) 442 U.S. 1, 11 [60 L.Ed.2d 668, 677, 99 S.Ct. 2100].) The decision to grant parole is discretionary. It is based on a host of variables aimed at predicting what would best serve correctional purposes and the society at large. (See *id.,* at p. 10 [60 L.Ed.2d at p. 677].) ▉ By postponing the suitability hearings for two or three years, the board has exercised its discretion in concluding that respondents

---

[3] The board has always had the discretion to retain a prisoner for the maximum period because, among other factors, of the high degree of violence used in committing the crime. (*In re Minnis* (1972) 7 Cal.3d 639, 645, fn. 7 [102 Cal.Rptr. 749, 498 P.2d 997]; *In re Seabock* (1983) 140 Cal.App.3d 29, 37 [189 Cal.Rptr. 310].)

still pose a danger to society and would not be suitable for an earlier release date. The board applies the same suitability guidelines as it does with any candidate for parole, and there is no suggestion that respondents would have been granted an early release even if the hearings were heard annually. The record before us establishes that the Legislature has taken a balanced approach to making parole determinations. The findings accompanying respondents' records indicate that the board carefully reviewed the nature of the offenses, the inmates' character traits, psychological evaluations, institutional conduct and concern for public safety. Respondents are not entitled to anything more. The amended statute creates a procedural change which does not violate the federal and state constitutional proscriptions against ex post facto laws.

In view of our conclusion that amended section 3041.5, subdivision (b)(2) effects a procedural change only, we need not address respondents' argument that the amended statute is applicable only to inmates sentenced after the effective date of the amendments in issue.

The order granting summary judgment in *Morris et al.* v. *Castro* (A025695) is reversed. The order granting the petition for writ of habeas corpus in *In re Ellis* (A027818) is denied.

King, J., and Haning, J., concurred.

Respondent's petition for review by the Supreme Court was denied June 20, 1985.