Charles Denton WATSON,
Petitioner–Appellee,

v.

Wayne ESTELLE,
Respondent–Appellant.

No. 87–6599.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 6, 1988.

Opinion Oct. 6, 1988 Vacated.

Decided Sept. 21, 1989.

Carol S. Frederick, Supervising Deputy Atty. Gen., Los Angeles, Cal., for respondent-appellant.

Donald Specter, San Quentin Prison Law Office, San Quentin, Cal., for petitioner-appellee.

Before GOODWIN and HALL, Circuit Judges, and MARQUEZ,* District Judge.

CYNTHIA HOLCOMB HALL, Circuit Judge:

We recalled the mandate from our judgment in *Watson v. Estelle*, 859 F.2d 105 (9th Cir.1988), pursuant to our power to prevent injustice and to protect the integrity of our processes. *See Zipfel v. Halliburton Co.*, 861 F.2d 565, 567 (9th Cir. 1988); *Aerojet–General Corp. v. Ameri-*

---

* Honorable Alfredo C. Marquez, United States District Judge for the District of Arizona, sitting by designation.

*can Arbitration Ass'n,* 478 F.2d 248, 254 (9th Cir.1973). We vacate that opinion and enter this one in its stead.

Petitioner-appellee Charles Denton Watson sought a writ of habeas corpus directing respondent-appellant Wayne Estelle to provide him with annual parole hearings. The district court granted the writ on the grounds that Watson was entitled to annual parole hearings under the *ex post facto* clause of the United States Constitution. *See* Art. I, § 10, cl. 1 ("No State shall ... pass any ... ex post facto Law"). Estelle appeals this ruling.

Watson and a number of female followers of Charles Manson committed seven horrific murders in August, 1969. At the time he committed these crimes, Watson was subject to punishment by death, and indeed he was sentenced to death in 1971. The California Supreme Court invalidated the death penalty the following year, *see People v. Anderson,* 6 Cal.3d 628, 100 Cal. Rptr. 152, 493 P.2d 880 (1972), however, and Watson's sentence was reduced to life imprisonment under the Indeterminate Sentence Law (ISL). At the time Watson committed the seven murders, a defendant sentenced to life imprisonment in California had no statutory guarantee as to the frequency with which he would be considered for parole and the case law established a right only to periodic review. *See In re Jackson,* 39 Cal.3d 464, 469–70, 216 Cal. Rptr. 760, 703 P.2d 100 (1985) (citing *In re Schoengarth,* 66 Cal.2d 295, 57 Cal.Rptr. 600, 425 P.2d 200 (1967)).

Despite the fact that at the time he committed his crimes he was subject to the death penalty and had no right to annual parole hearings in the event of a life sentence, Watson argues that his current sentence of life imprisonment with guaranteed parole hearings every three years violates the *ex post facto* clause of the United States Constitution. The circumstances giving rise to this claim took place in 1977, about eight years after Watson committed his crimes.

On July 1, 1977, the California Determinate Sentencing Law (DSL), Cal. Penal Code § 3041.5 (West Supp.1978), took effect. *See Jackson,* 39 Cal.3d at 467, 216 Cal.Rptr. 760, 703 P.2d 100. The DSL provided that all prisoners then serving prison sentences for whom a parole release date had not been set were entitled to annual parole suitability hearings. Cal. Penal Code § 3041.5(b)(2). Thus, Watson was entitled to annual parole hearings under the DSL. However, California amended section 3041.5(b)(2) in 1981 to provide the following exception to the requirement that the California Board of Prison Terms (the Board) hold annual parole suitability hearings:

> The board shall hear each case annually thereafter, except the board may schedule the next hearing no later than three years after any hearing at which parole is denied if the prisoner has been convicted ... of more than one offense which involves the taking of a life, and the board finds that it is not reasonable to expect that parole would be granted at a hearing during the following years and states the bases for the finding.

Cal. Penal Code § 3041.5(b)(2) (West 1982), now codified at section 3041.5(b)(2)(B) [hereinafter section 3041.5(b)(2)].

This lawsuit springs from the Board's decision in 1983 to delay Watson's parole suitability hearings for the maximum three-year period authorized by the 1981 amendment to section 3041.5(b)(2). After exhausting state remedies, Watson filed this petition for habeas corpus arguing that the Board's failure to provide him with the annual parole hearings provided for by the original DSL enacted in 1977 violated the *ex post facto* clause. We review the district court's decision to grant Watson's petition de novo. *See Carter v. McCarthy,* 806 F.2d 1373, 1375 (9th Cir.1986), *cert. denied,* 484 U.S. 870; 108 S.Ct. 198, 98 L.Ed.2d 149 (1987).

"[T]wo critical elements must be present for a criminal or penal law to be *ex post facto:* it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981). In this case, the 1981

amendment to the DSL is retrospective because it establishes a timetable for parole eligibility hearings for defendants like Watson who committed their crimes before its enactment. Thus, the only question in this case is whether Watson is disadvantaged by the 1981 amendment.

In the *Jackson* case, the California Supreme Court rejected an *ex post facto* challenge to a 1982 amendment to the DSL, which like the 1981 amendment, permits the board to delay annual parole hearings.[1] The court held that "the 1982 amendment is a procedural change outside the purview of the ex post facto clause." *Jackson*, 39 Cal.3d at 474–73, 216 Cal.Rptr. 760, 703 P.2d 100. However, the *Jackson* court first rejected the state's argument that "since [the petitioner] was not statutorily entitled to periodic parole review when he committed his offense, any subsequent reduction in the frequency of such review does not operate to his disadvantage." *See id.* at 469, 216 Cal.Rptr. 760, 703 P.2d 100.

In this case, the magistrate's final report and recommendation also rejected respondent's argument that "petitioner has not been subjected to an ex post facto law, in that his punishment is not greater than prescribed at the time of the crime/sentence."[2] The state contests this conclusion on appeal, arguing that Watson's *ex post facto* challenge must fail because "[t]here was no legal requirement that petitioner be given annual parole consideration hearings at either the time he committed the offenses of which he was convicted or the time that he was received by the California Department of Correction."

Initially, it is clear that the California Supreme Court's rejection of respondent's position does not bind this court. "Whether a retrospective state criminal statute ameliorates or worsens conditions imposed by its predecessor is a federal question." *Weaver*, 450 U.S. at 33, 101 S.Ct. at 966; *see also Lindsey v. Washington*, 301 U.S. 397, 400, 57 S.Ct. 797, 798, 81 L.Ed. 1182 (1937); *Chatman v. Marquez*, 754 F.2d 1531, 1535 (9th Cir.1985). "A decision of the Supreme Court of California, construing the Constitution of the United States, while entitled to great respect, is not binding upon the federal courts." *Smayda v. United States*, 352 F.2d 251, 253 (9th Cir.1965), *cert. denied*, 382 U.S. 981, 86 S.Ct. 555, 15 L.Ed.2d 471 (1966). This is a cardinal principle of constitutional adjudication in the federal courts.[3]

It is true, of course, that "in applying the *ex post facto* prohibition of the Federal Constitution to state laws, [a federal court] accepts the meaning ascribed to them by the highest court of the state." *Lindsey*, 301 U.S. at 400, 57 S.Ct. at 798. We have done just that. The California Supreme Court conceded in *Jackson* that prior to 1977, which includes the time Watson committed the crimes, individuals had no expectation of annual parole. *Jackson*, 39 Cal.3d at 469–70, 216 Cal.Rptr. 760, 703 P.2d 100. The *Jackson* court erred, however, in concluding that because the legislature intended all defendants to have the benefit of the DSL irrespective of the dates of their crimes, "for ex post facto purposes, this

1. The 1982 amendment permits the board to delay a parole suitability hearing for two years, but it applies to all crimes, not just multiple murders, as does the 1981 amendment. *See* Cal.Penal Code § 3041.5(b)(2)(A).

2. The district court did not expressly adopt the magistrate's report, but instead noted that it had considered the report and the objections thereto. The district court entered a simple order "that the petition for writ of habeas corpus is granted."

3. *See Townsend v. Sain*, 372 U.S. 293, 318, 83 S.Ct. 745, 759, 9 L.Ed.2d 770 (1963); *Frazier v. Lowndes County, Miss., Bd. of Educ.*, 710 F.2d 1097, 1101 (5th Cir.1983); *Pigee v. Israel*, 670 F.2d 690, 694 (7th Cir.1982), *cert. denied*, 459 U.S. 846, 103 S.Ct. 103, 74 L.Ed.2d 93 (1982); *Bryant v. Civiletti*, 663 F.2d 286, 293 n. 15 (D.C. Cir.1981); *Hawkman v. Parratt*, 661 F.2d 1161, 1166 (8th Cir.1981); *Industrial Consultants, Inc. v. H.S. Equities, Inc.*, 646 F.2d 746, 749 (2d Cir.), *cert. denied*, 454 U.S. 838, 102 S.Ct. 145, 70 L.Ed.2d 120 (1981); *Southwest Offset, Inc. v. Hudco Pub., Inc.*, 622 F.2d 149, 152 (5th Cir. 1980); *Woods v. Holy Cross Hospital*, 591 F.2d 1164, 1171 (5th Cir.1979); *Bittaker v. Enomoto*, 587 F.2d 400, 402 n. 1 (9th Cir.1978), *cert. denied*, 441 U.S. 913, 99 S.Ct. 2013, 60 L.Ed.2d 386 (1979); *U.S. ex rel. Moore v. Woods*, 420 F.2d 1260, 1262 (7th Cir.1970).

case [must] be analyzed as if annual review were in effect at the time respondent committed his offense." *Jackson*, 39 Cal.3d at 470, 216 Cal.Rptr. 760, 703 P.2d 100.

Certainly, it is within the prerogative of the State of California to determine whether its DSL applied retrospectively to the benefit of persons having no expectation of annual parole at the time they committed their crimes. Indeed, absent California's decision to apply the DSL retrospectively, the *ex post facto* clause would not even be implicated. But it is not for California to say that "for ex post facto purposes" the DSL magically became the law in effect at the time Watson perpetrated the crimes. The *ex post facto* clause is not concerned with fiction.[4]

■ At the time Watson committed the seven murders, annual parole suitability review was not in effect. The key *ex post facto* inquiry is the actual state of the law at the time the defendant perpetrated the offense. *See United States v. Ahumada–Avalos*, 875 F.2d 681, 684 (9th Cir.1989); *United States v. Calabrese*, 825 F.2d 1342, 1346 (9th Cir.1987); *Hayward v. United States Parole Com'n* 659 F.2d 857, 862 (8th Cir.1981), *cert. denied*, 456 U.S. 935, 102 S.Ct. 1991, 72 L.Ed.2d 454 (1982).

"[C]entral to the *ex post facto* prohibition is a concern for 'the lack of fair notice and governmental restraint when the legislature increases punishment beyond what

was prescribed *when the crime was consummated.'*" *Miller v. Florida*, 482 U.S. 423, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987) (quoting *Weaver*, 450 U.S. at 30, 101 S.Ct. at 965) (emphasis added). The actual state of the law at the time a defendant commits the offense is determinative of whether he had fair notice of the consequences of his actions. In *Miller*, the Supreme Court reaffirmed the Court's initial interpretation of the scope of clause in *Calder v. Bull*, 3 Dall. 386, 1 L.Ed. 648 (1798):

> 1st. Every law that makes an action done before the passing of the law, and which was innocent *when done*, criminal, and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, *when committed*. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, *when committed*. 4th. Every law that alters the legal rules of evidence, and receives less, or different testimony, than the law required *at the time of the commission of the offense*, in order to convict the offender.

*Miller*, 107 S.Ct. at 2450 (quoting *Calder*, 3 Dall. at 391) (emphasis added).

■ Watson does not even advance the argument that the DSL's system of regularized parole hearings, including the 1981 amendment, is more onerous than the prac-

---

**4.** Judge Marquez' concurrence charges that our holding fails to respect California law. We disagree. This court, of course, is bound by California's assessment of the law actually in effect the time Watson committed his crimes. *Lindsey*, 301 U.S. at 400, 57 S.Ct. at 798. The California Supreme Court has held that California law in 1969 did not provide defendants with an expectation of annual parole eligibility hearings. *Jackson*, 39 Cal.3d at 469–70, 216 Cal.Rptr. 760, 703 P.2d 100. The concurrence asserts that we err, however, because the *Jackson* court's conclusion that "the DSL was the law in effect at the time Watson committed his crimes was *not* an interpretation of the U.S. Constitution, but rather, an interpretation of the *meaning* of state law." Concurrence at 1100 n. 4. This is incorrect. The *Jackson* court stated that *"for ex post facto purposes*, this case [must] be analyzed as if annual review were in effect at the time respondent committed his offense." 39 Cal.3d at 470, 216 Cal.Rptr. 760, 703 P.2d 100. (emphasis add-

ed). Thus, the *Jackson* court concluded that the ex post facto clause permits consideration of something other than the *actual* status of state law at the time of a defendant's crime, and in this assessment, the court misconstrued the federal Constitution.

Judge Marquez acknowledges that "it appears to be a correct statement of [the] law that we must look to the law as it actually existed at the time Watson committed his crimes," but he urges that application of this principle "ignores the realities of this case." Concurrence at 1099. The realities of this case are that at the time Watson committed the murders he was subject to the death penalty and had no expectation of annual parole hearings. Although originally sentenced to die, he now serves a term of life imprisonment and is eligible for freedom every three years. These changes in the law do not disadvantage Watson under the ex post facto clause.

tice of periodic parole review in place when he murdered his seven victims. And yet it is "axiomatic that for a law to be *ex post facto* it must be more onerous than the prior law." *Dobbert v. Florida*, 432 U.S. 282, 294, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977). As demonstrated, the "prior law" refers to the law in force at the time of the commission of the crime. In its totality, the amended DSL "affords significantly more safeguards to the defendant than did the old" system of periodic review. *Cf. id.* at 295, 97 S.Ct. at 2299. Indeed, Watson hardly could argue that the law failed to apprise him of the grave repercussions of his conduct, as he was subject to the death penalty at the time he committed the seven murders.[5] Under these circumstances, a reprieve from the gallows with the chance of parole every three years does not disadvantage Watson.

Watson's *ex post facto* argument rests not upon a change in the law more onerous than that when he committed his crimes, but upon a change in a law that itself was not even enacted in 1969. Watson's "sophistic argument mocks the substance of the *Ex Post Facto Clause*." *Id.* at 297, 97 S.Ct. at 2300. Such *ex post facto* challenges uniformly have met with defeat.

In the leading case of *Breest v. Helgemoe*, 579 F.2d 95 (1st Cir.), *cert. denied*, 439 U.S. 933, 99 S.Ct. 327, 58 L.Ed.2d 329 (1978), the court considered an *ex post facto* challenge by a defendant convicted of the first degree murder of a young woman and sentenced to life imprisonment with parole eligibility after forty years. *Id.* at 97. On the date the defendant committed his crime, the penalty for first degree murder was life imprisonment without possibility of parole. *Id.* at 98. Before his indict-

ment, however, the state enacted a new provision providing for parole eligibility after eighteen years for persons serving life sentences. *Id.* Finally, almost a year later but before the defendant's trial, the state enacted another provision requiring a defendant convicted of a "psychosexual" murder to serve a minimum of forty years before parole eligibility. It was under this provision that the defendant was sentenced.

The defendant in *Breest* argued that the *ex post facto* clause required that he be sentenced pursuant to the eighteen-year parole eligibility provisions in effect at the time of his indictment. The court convincingly rejected this argument, reasoning that the defendant had adequate notice of the seriousness of his crime at the time he committed it. "That the state later decided to treat first degree murders more leniently, but some even more leniently than others, does not render petitioner's notice inadequate." *Id.* at 103. In fact, the court found the sentence of life imprisonment with parole eligibility after forty years to have benefited the defendant. "[R]ather than being singled out for harsher treatment, [the defendant] appears to have been the ... beneficiary of the state's experiment with greater leniency." *Id.*

*Breest* is squarely on point, and we concur in its reasoning.[6] Indeed, this court recently addressed a similar claim in *Tripati v. U.S. Parole Com'n*, 872 F.2d 328 (9th Cir.1989). In *Tripati*, a defendant convicted of federal banking violations filed a petition for a writ of habeas corpus. He claimed that the United States Parole Commission (USPC) improperly had exceeded the suggested parole guidelines by ruling him eligible for parole after being in custo-

---

5. While the California Supreme Court subsequently struck down as unconstitutional the death penalty statute under which Watson was sentenced, "the existence of the statute served as an 'operative fact' to warn the petitioner of the penalty which [the state] would seek to impose on him if he were convicted of first-degree murder." *Dobbert*, 432 U.S. at 298, 97 S.Ct. at 2300.

6. The petitioner in *Breest* filed a total of four petitions for habeas corpus. *See Breest v. Cunningham*, 784 F.2d 435, 436 (1st Cir.1986), *cert. denied*, 479 U.S. 842, 107 S.Ct. 152, 93 L.Ed.2d

93 (1986). In his third petition, the First Circuit granted the defendant's request for a new proceeding on his classification as a psycho-sexual murderer. *See Breest v. Cunningham*, 752 F.2d 8 (1st Cir.1985). The court concluded that it violated due process to convict the defendant of attempted sexual assault where he was charged with attempted sexual abuse. *Id.* at 11. This subsequent decision obviously has no bearing on the *Breest* court's original *ex post facto* holding.

dy for seventy-two months. The *Tripati* court noted that the USPC had authority to exceed the suggested parole guidelines pursuant to 18 U.S.C. § 4206(c). The petitioner argued, however, that section 235(b)(3) of the Sentencing Reform Act (SRA), 18 U.S.C. § 3551 note, impliedly repealed 18 U.S.C. § 4206 and with it, the USPC's power to exceed the suggested parole guidelines. *See* Pub.L. No. 98–473, Title II § 235(b)(3), 98 Stat. 1976, 2031 (1984). Significantly, the petitioner also argued that application of a subsequent amendment to section 235(b)(3), which made it clear that section 4206 continued to apply to prisoners such as the petitioner, would violate the *ex post facto* clause.

The *Tripati* court rejected the petitioner's contention that application of the amended section 235(b)(3) violated the *ex post facto* clause.[7] The petitioner had been sentenced on January 6, 1984, and therefore had committed the banking violations long before the effective date of either the original section 235(b)(3) on November 1, 1987, or its amendment on December 7, 1987. At the time he committed his crimes, 18 U.S.C. § 4206(c) empowered the USPC to exceed the suggested parole guidelines. Consequently, the court concluded that application of the amended section 235(b)(3) merely maintained the status quo ante, defeating the petitioner *ex post facto* challenge. *Tripati*, 872 F.2d at 330; *see also Lightsey v. Kastner*, 846 F.2d 329, 333–34 (5th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 807, 102 L.Ed.2d 798 (1989). Watson's *ex post facto* challenge is of the same order, and accordingly the district court's judgment is

REVERSED.

MARQUEZ, District Judge, concurring:

I concur in the result reached by the majority. Because I do not agree entirely

with the reasoning used to reach that result, I file this concurring opinion.

In his petition for writ of habeas corpus, Watson challenges the *ex post facto* constitutionality of the 1981 amendments to California's Determinate Sentencing Law (DSL).

At the time Watson committed his crimes, California law provided for "periodic review" of prisoner parole suitability, with no statutory requirement regarding the frequency of such review. The DSL took effect in 1977, providing that each inmate's prospects for parole would be evaluated annually. In 1981, the DSL was amended to create an exception to the annual review requirement. The amendment provided that inmates convicted of more than one offense involving the taking of life (such as Watson) could have their parole suitability hearings delayed by the California Board of Prison Terms for up to three years, provided that the Board made certain written findings. In 1983, the Board delayed Watson's hearing for three years pursuant to the 1981 amendments. Watson argues that the 1981 amendments are unconstitutional under the Ex Post Facto clause of the U.S. Constitution.[1] He does not challenge the findings made by the board justifying their actions.

The majority correctly recognizes that federal courts entertaining ex post facto claims under the U.S. Constitution must undertake a two step analysis to determine whether the challenged statute is constitutional. *Weaver v. Graham*, 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981), *Miller v. Florida*, 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987). First, we must determine whether the challenged statute is retrospective. If it is, then we must determine whether it "disad-

---

**7.** The court rejected the petitioner's *ex post facto* claim on two other alternative grounds. The court first rejected his argument that section 235(b)(3) impliedly repealed section 4206 for prisoners such as himself, noting that section 235(b)(1) of the SRA expressly continued section 4206 in effect for certain prisoners. The court also concluded that, assuming that the

original section 235(b)(3) impliedly repealed section 4206 for prisoners to be paroled after November 1, 1992, it did not apply to the petitioner because he was eligible for parole on July 16, 1989. *Tripati*, 872 F.2d at 330.

**1.** U.S. Constitution, Article 1, § 9.

vantages" the offender whom it affects. *Id.*

A retrospective statute is one which changes the legal consequences of acts completed before its effective date. *Weaver, supra*, 450 U.S. at 31, 101 S.Ct. at 965. The majority concludes that 1981 DSL amendment is retrospective because it "establishes a time table for parole eligibility hearings for defendants like Watson who committed their crimes before its enactment." Because this amounts to changing the legal consequences of Watson's crimes, I agree with the majority that the 1981 DSL amendment is retrospective.

However, I part company with the majority in its treatment of the second part of the *Weaver* analysis, to wit, whether the 1981 DSL amendment disadvantages Watson.

In concluding that the 1981 amendment does not disadvantage Watson, the majority states, "The key *ex post facto* inquiry is the actual state of the law at the time the defendant perpetrated the offense." At the time Watson committed his crimes, California law provided for periodic review of parole suitability. In determining that Watson was not disadvantaged by the 1981 DSL amendment, the majority compares that statute to "periodic review".

While it appears to be a correct statement of law that we must look to the law as it actually existed at the time Watson committed his crimes (the majority cites *United States v. Ahumada–Avalos*, 875 F.2d 681, 684 (9th Cir.1989), *United States v. Calabrese*, 825 F.2d 1342, 1346 (9th Cir. 1987), and *Hayward v. United States Parole Comm'n*, 659 F.2d 857, 862 (8th Cir. 1981) for this proposition), to do so ignores the realities of this case.

The California legislature declared that some portions of the 1977 Determinate Sentencing Law were retrospective. All California state prisoners who did not have parole dates set and who were incarcerated

as of July 1, 1977 were entitled to annual review. *In Re Jackson*, 39 Cal.3d 464, 216 Cal.Rptr. 760, 761, 703 P.2d 100, 101 (1985), *In Re Bray*, 97 Cal.App.3d 506, 158 Cal. Rptr. 745, 747, (1979). Because Watson was imprisoned and had received no parole date as of July 1, 1977, the DSL entitled him to annual review.

Retrospective legislation changes the legal effect of an act previously committed. *Weaver, supra* 450 U.S. at 31, 101 S.Ct. at 965. The DSL changed the legal effect of Watson's crimes in that it entitled him to annual parole suitability review instead of periodic review. The California Supreme Court subsequently found that the legislature clearly intended the DSL to apply retrospectively. *Bray, supra* 158 Cal.Rptr. at 747.

The California Supreme Court has stated that the DSL was retrospective[2] and that it therefore was the law "in effect" at the time Watson committed his crimes.[3] The U.S. Supreme Court has held that federal courts applying the federal ex post facto clause must accept the *meaning* [emphasis added] of state laws as determined by the state's highest court:

> "This Court, in applying the *ex post facto* prohibition of the Federal Constitution to state laws, accepts the meaning ascribed to them by the highest court of the state."

*Lindsey v. State of Washington*, 301 U.S. 397, 400, 57 S.Ct. 797, 798, 81 L.Ed. 1182 (1937). Therefore, *Lindsey* requires us to accept the meaning which the California Supreme Court has ascribed to the DSL: that it is retrospective and that it was the law "in effect" at the time Watson committed his crimes.

The cases cited by the majority for the proposition that we must compare the 1981 amendment to "periodic review" are distinguishable because none deals with the situation where the law existing at the time the offense was committed is later modified

---

**2.** *Jackson, supra* 216 Cal.Rptr. at 761, 703 P.2d at 101.

**3.** "[I]t is evident that, in respect of the retroactive portions of the DSL, its effect was … as if

the DSL were the law at the time they committed their offenses." *In Re Bray, supra* 158 Cal. Rptr. at 749.

retrospectively. When the 1977 DSL was enacted retrospectively, it became, for our purposes, the law in existence at the time Watson committed his offense. Therefore, our ex post facto analysis must compare the 1981 amendment to the 1977 DSL rather than to periodic review. By comparing the 1981 amendment to periodic review [4], the majority fails to respect the California Supreme Court's interpretation of the 1977 DSL, as we must do under *Lindsey*. It is primarily for this reason that I cannot join in the majority opinion.

When the 1981 amendment is compared to the 1977 DSL, I feel that the 1981 amendment does not disadvantage Watson. The U.S. Supreme Court has held that mere procedural changes do not violate the ex post facto prohibition [5]. *Dobbert v. Florida*, 432 U.S. 282, 293–94, 97 S.Ct. 2290, 2298–99, 53 L.Ed.2d 344 (1977), *Miller v. Florida* 482 U.S. at 430, 433, 107 S.Ct. at 2451, 2452–53 (1987). The U.S. Supreme Court has defined procedural changes, for ex post facto purposes, as those which do not affect the crime for which the defendant was indicted, the punishment prescribed therefore or the degree of proof necessary to establish guilt. *Hopt v. Utah*, 110 U.S. 574, 589–90, 4 S.Ct. 202, 210, 28 L.Ed. 262 (1884). The Court adopted a similar definition in *Dobbert, supra*, 432 U.S. at 294, 97 S.Ct. at 2298.

The 1981 DSL amendment merely changed the frequency with which Wat-

son's parole suitability would be determined. It did not affect the crime for which Watson was indicted and convicted, the punishment prescribed therefore, or the degree of proof necessary to establish his guilt. Under *Hopt* and *Dobbert*, therefore, the 1981 amendment was merely procedural. Furthermore, the 1981 amendment did not alter the factors to be considered in determining parole suitability.

A change in the law which alters a substantial right can violate the ex post facto provision "even if the statute takes a seemingly procedural form". *Weaver, supra*, 450 U.S. at 29, n. 12, 101 S.Ct. at 964, n. 12. Doubtless, Watson's right to parole is "substantial". However, because of the procedural safeguards included in the 1981 amendments, I do not feel that Watson's right to parole is affected. Before a prisoner's annual parole suitability hearing can be postponed, the Board is required to make written findings giving reasons for the refusal to set a parole date and for the postponement of annual review. *Jackson, supra*, 216 Cal.Rptr. at 768–69, 703 P.2d at 109. Furthermore, the California Supreme Court has indicated that these procedural safeguards will be strictly enforced. In *Jackson*, although the court found the 1982 amendments to be procedural only and therefore not subject to ex post facto attack, it held that the Board had not suffi-

---

4. The majority states "The *Jackson* court erred, however, in concluding that because the legislature intended all defendants to have the benefit of the DSL irrespective of the dates of their crimes, 'for ex post facto purposes, this case [must] be analyzed as if annual parole were in effect at the time respondent committed his offense'." The majority further states, "[I]t is not for California to say that 'for ex post facto purposes' the DSL magically became the law in effect at the time Watson perpetrated the crimes."

Although the majority cites no case law whatsoever as to why it is not within the province of the California Supreme Court to declare that the DSL was the law in effect at the time Watson committed his crimes, I presume it is because "A decision of the Supreme Court of California, construing the Constitution of the United States, while entitled to great respect, is not binding upon the federal courts," quoting *Smayda v. United States*, 352 F.2d 251, 253 (9th Cir.1965).

The flaw in this argument is that the California Supreme Court's decision that the DSL was the law in effect at the time Watson committed his crimes was *not* an interpretation of the U.S. Constitution, but rather, an interpretation of the *meaning* of a state law (*Lindsey, supra*). As such, *Smayda* is inapposite. Because this is a decision falling within the scope of *Lindsey*, we are required to embrace it.

5. As the U.S. Supreme Court has noted, the distinction between substance and procedure is often a difficult one to make. *Miller v. Florida*, 482 U.S. 423, 433, 107 S.Ct. 2446, 2453, 96 L.Ed.2d 351 (1987).

Further reflection has convinced me that our original decision, reported at 859 F.2d 105 (1988) and holding that the 1981 amendments were unconstitutional as applied to Watson, was in error. That opinion has been recalled.

ciently stated its reasons for denying Jackson annual review.

Because Watson was not disadvantaged by the 1981 amendment to the DSL, his ex post facto claim fails. Although I agree with the majority's holding that Watson's claim fails, I do not agree with its legal reasoning.

I concur.