**Eugene Fred CONNOR, Petitioner–Appellant,**

v.

**Wayne ESTELLE, Warden, Respondent–Appellee.**

**No. 91–55889.**

United States Court of Appeals, Ninth Circuit.

Submitted Oct. 8, 1992 *.

Decided Oct. 26, 1992.

As Amended Dec. 31, 1992.

---

* The panel finds this case appropriate for submission without oral argument pursuant to 9th

Cir.R. 34–4 and Fed.R.App.P. 34(a).

Eugene Fred Connor, in pro per.

Jane Catherine Malich, Deputy Atty. Gen., Los Angeles, CA, for respondent-appellee.

Before: BROWNING, THOMPSON and KLEINFELD, Circuit Judges.

PER CURIAM:

Eugene Fred Connor appeals pro se the denial of his habeas corpus petition. We have jurisdiction under 28 U.S.C. § 2253, and we affirm.

Connor was convicted of first-degree murder and sentenced to life imprisonment under California's Indeterminate Sentencing Law (ISL). Following his sentencing, California repealed the ISL and enacted the current Determinate Sentencing Law (DSL). Connor has been considered for parole under the DSL's guidelines on four separate occasions. Each time he was found unsuitable for release.

The DSL adopted a two-stage approach to parole decisions. First, a prisoner must be found suitable for parole under the DSL guidelines. Once this occurs, a date is set for his release. Connor argues that by considering him for parole under the DSL guidelines, rather than the ISL guidelines, the Board of Prison Terms (BPT) violated the prohibition against *ex post facto* laws. He also contends the BPT denied him equal protection under the law and violated his right to due process.

## DISCUSSION

"The *ex post facto* prohibition forbids the Congress and the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'" *Weaver v. Graham*, 450 U.S. 24, 28, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981) (quoting *Cummings v. Missouri*, 4 Wall. 277, 325–26, 18 L.Ed. 356 (1867)). For a law to be *ex post facto*, "it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Id.* 450 U.S. at 29, 101 S.Ct. at 964.

Connor's first contention is that by applying the DSL guidelines to determine his suitability for parole the BPT violated the prohibition against *ex post facto* laws. However, the DSL guidelines require consideration of the same criteria as did the

ISL.[1] *See In re Duarte*, 143 Cal.App.3d 943, 951, 193 Cal.Rptr. 176 (1983) (holding that the application of the DSL guidelines to a prisoner sentenced under the ISL did not violate the *ex post facto* clause); *In re Seabock*, 140 Cal.App.3d 29, 40, 189 Cal. Rptr. 310 (1983) (same).

We agree with the California courts that have considered the issue and hold that the application of the DSL parole-suitability guidelines to prisoners sentenced under the ISL does not disadvantage them, and therefore does not violate the federal constitutional prohibition against *ex post facto* laws.[2]

■ Connor also asserts that he is disadvantaged in the second part of the parole determination in which his release date is set. However, the California Supreme Court has held that a prisoner sentenced under the ISL is entitled to have his release date calculated under either the ISL or DSL procedures, whichever is more beneficial. *See In re Stanworth*, 33 Cal.3d 176, 187 Cal.Rptr. 783, 654 P.2d 1311 (1982). Accordingly, Connor is not disadvantaged.

Connor argues that under the ISL he was entitled to be considered for parole annually, but under the DSL as long as three years may elapse between his parole suitability hearings. He argues this is a retrospective change of state law that disadvantaged him in violation of the *ex post facto* clause. We reject this argument because Connor has not been disadvantaged by the DSL.

Connor committed his crime in 1975. Between 1972 and 1977, it was the judicially approved policy of California that prisoners

"should" be accorded an annual parole suitability review, except that in "extreme cases" the review could be every two or three years. *In re Jackson*, 39 Cal.3d 464, 469–70, 216 Cal.Rptr. 760, 703 P.2d 100 (1985). This policy placed a lid of three years on the time between parole hearings.

In 1977, the DSL became effective. California prisoners in Connor's category then became entitled to annual parole suitability hearings. This entitlement, however, was changed by subsequent amendments. Under California's present system for parole suitability review, a prisoner in Connor's category is entitled to a parole suitability hearing every one-to-three years. *See* Cal.Admin.Code, title 15, § 2270 (West 1992). Because this is the same frequency with which parole suitability hearings were to be held at the time of Connor's crime, he has not been disadvantaged by the DSL or by the administrative regulations adopted pursuant to that statute. *See Watson v. Estelle*, 886 F.2d 1093, 1097 (9th Cir.1989) (California prisoner not disadvantaged by 1981 amendment to DSL which substituted potential triennial parole suitability hearings for right to annual hearings which had been established by the 1977 version of the DSL, because the prisoner committed his crime in 1969 and at that time California law provided only for "periodic" parole suitability review).

Connor's equal protection and due process claims are without merit. The ISL and DSL guidelines apply identical criteria in determining parole suitability. Accordingly, application of the DSL guidelines did not deny Connor equal protection of the

---

**1.** Both the DSL and the ISL require the BPT to consider a variety of factors in deciding whether to release a prisoner on parole. These include the prisoner's offense, age, habits, mental state, character, amenability to reform, and potential for recidivism. *See In re Duarte*, 143 Cal.App.3d 943, 947–49, 193 Cal.Rptr. 176 (1983). Contrary to Connor's assertion, both the ISL and DSL authorize the BPT to consider a prisoner's rehabilitative efforts while in prison. *See* Cal.Admin.Code, title 15, section 2281 (DSL allows for consideration of prisoner's ex-

pressions of remorse, preparation for life outside prison, and behavior while incarcerated).

**2.** The State of California also argues that the DSL guidelines are not "laws" for *ex post facto* purposes. *See Smith v. United States Parole Comm'n*, 875 F.2d 1361, 1367 (9th Cir.1989) ("*guidelines* of the Parole Commission ... are not law for purposes of the ex post facto clause") (emphasis in original). We do not decide this question, because we conclude that even if the guidelines are laws, their application did not disadvantage Connor.

law or impair his rights to due process. *See In re Duarte*, 143 Cal.App.3d at 951, 193 Cal.Rptr. 176.[3]

AFFIRMED.

---

**3.** The district court found that Connor exhausted his state court remedies. We accept that finding.