**Jose Ramon MORALES, a/k/a Pablo Jose Ramon Morales, Petitioner–Appellant,**

v.

**CALIFORNIA DEPARTMENT OF CORRECTIONS; E.R. Meyers, Warden; Attorney General of the State of California; Board of Prison Terms, Respondents–Appellees.**

No. 92–56262.

United States Court of Appeals, Ninth Circuit.

Submitted July 15, 1993 *.

Submission Deferred July 19, 1993.

Resubmitted Dec. 7, 1993.

Decided Feb. 9, 1994.

---

* This panel unanimously agrees that this case is appropriate for submission without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34–4.

Jose R. Morales, pro per, petitioner-appellant.

Robin M. Miller, Deputy Attorney General, Los Angeles, California, for the respondent-appellee.

Before: FLOYD R. GIBSON,** HALL, and KLEINFELD, Circuit Judges.

FLOYD R. GIBSON, Senior Circuit Judge:

Jose Morales appeals the district court's denial of his petition for a writ of habeas corpus. We affirm in part and reverse in part.

## I. BACKGROUND

In 1971, Morales was convicted for the first degree murder of his girlfriend. When she was found, it was discovered that her thumb had been cut off. After being transferred to a half-way house in April 1980, he married a woman who had visited him during his incarceration. In May, Morales was paroled; his wife disappeared two months later. Approximately two weeks after she disappeared, her hand was discovered on the Hollywood Freeway in Los Angeles. Her body was never recovered.

Morales pleaded nolo contendere to the second degree murder of his wife and was sentenced to an imprisonment term of fifteen years to life. His earliest parole eligibility

** The Honorable Floyd R. Gibson, Senior Circuit Judge from the Eighth Circuit, sitting by designation.

date was August 2, 1990. On July 25, 1989, the California Board of Prison Terms ("the Board") conducted an initial parole consideration, found Morales unsuitable for parole, and set Morales' next hearing date three years later. Morales filed a petition for a writ of habeas corpus, alleging that 1) his rights under the ex post facto clause were violated when his next hearing date was scheduled three years later, 2) he was denied parole based on false and perjured information, and 3) he was not sentenced in accordance with California law. The magistrate judge recommended the writ be denied on counts two and three and issued as to count one. The district court adopted the magistrate's report and recommendation as to counts two and three and denied relief on count one. Morales has appealed pro se.

## II. DISCUSSION

### A. The Ex Post Facto Clause

■ Critical to the understanding of Morales' ex post facto claim is an understanding of the evolution of California's law regarding parole hearings. "Between 1972 and 1977, it was the judicially approved policy of California that prisoners should be accorded an annual parole suitability review, except that in extreme cases the review could be every two or three years." *Connor v. Estelle*, 981 F.2d 1032, 1034 (9th Cir.1992) (per curiam) (quotations omitted). During this time period, criminals were sentenced pursuant to California's Indeterminate Sentencing Law (ISL). *Id.* at 1033. In 1977, the California Legislature replaced the ISL with the Determinate Sentencing Law (DSL). The DSL mandated annual parole hearings, Cal.Penal Code § 3041.5(b)(2) (1976), until it was amended in 1981 to allow the Board to decide, in particular situations, to defer a parole hearing for up to three years when the inmate's crime involved multiple murders.

The DSL was again amended in 1982 to grant the Board the power to defer parole hearings for all crimes. *See Watson v. Estelle*, 886 F.2d 1093, 1094–95 & n. 1 (9th Cir.1989) (discussing evolution of this aspect of the DSL).

Article I, section 10 of the Constitution prohibits the states from passing ex post facto laws. The implications of this clause are unusually clear:

"It is settled, by decisions of this Court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done; *which makes more burdensome the punishment for a crime, after its commission,* or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as *ex post facto.*"

*Collins v. Youngblood,* 497 U.S. 37, 42, 110 S.Ct. 2715, 2719, 111 L.Ed.2d 30 (1990) (quoting *Beazell v. Ohio,* 269 U.S. 167, 169–70, 46 S.Ct. 68, 68, 70 L.Ed. 216 (1925)) (emphasis added). A law violates the restriction if it is applied retrospectively and implicates these well-known concerns. *Id.,* 497 U.S. at 46, 110 S.Ct. at 2721.[1] There can be no doubt that the law is being applied retrospectively; for ex post facto purposes, we examine "the actual state of the law at the time the defendant perpetrated the offense," *Watson,* 886 F.2d at 1096, and in this case California law required annual review when Morales killed his wife.[2] We thus proceed to the thornier aspect of the inquiry: whether the retrospective application of a law enlarging the time between parole hearings violates the protections envisioned by the clause or, instead, is it merely a procedural change in the law that lacks constitutional implication?[3]

---

1. The Supreme Court actually referred to the clause's "core concerns" as those identified by Justice Chase in *Calder v. Bull,* 3 Dall. 386, 390, 1 L.Ed. 648 (1798). *Collins,* 497 U.S. at 41–42, 110 S.Ct. at 2718–19. However, the Court went on to describe the *Beazell* formulation as a proper "summary," *id.* at 42, 110 S.Ct. at 2719; we refer to it instead of *Calder* in the interest of brevity.

2. This point differentiates this case from *Connor* and *Watson.* In both cases, the petitioners committed their crimes before the DSL was passed. *Connor,* 981 F.2d at 1034; *Watson,* 886 F.2d at 1096.

3. These two questions are really opposite sides of the same coin. A law that is procedural, by definition, will not implicate the core concerns of the ex post facto clause, *see Collins,* 497 U.S. at 45, 110 S.Ct. at 2720; on the other hand, a law

By increasing the interval between parole hearings, the state has denied Morales opportunities for parole that existed under prior law, thereby making the punishment for his crime greater than it was under the law in effect at the time his crime was committed. Logic dictates that because a prisoner cannot be paroled without first having a parole hearing, a parole hearing is a requirement for parole eligibility. *Akins v. Snow*, 922 F.2d 1558, 1562 (11th Cir.), *cert. denied*, ___ U.S. ___, 111 S.Ct. 2915, 115 L.Ed.2d 1079 (1991). Accordingly, any retrospective law making parole hearings less accessible would effectively increase the sentence and violate the ex post facto clause. We base this conclusion on the Supreme Court's observation that the denial of parole is a part of a defendant's punishment. *Warden v. Marrero*, 417 U.S. 653, 662, 94 S.Ct. 2532, 2537, 41 L.Ed.2d 383 (1974). The Court went on to note that "a repealer of parole eligibility previously available to imprisoned offenders would clearly present the serious question under the *ex cost facto* clause...." *Id.* at 663, 94 S.Ct. at 2538; *see also Weaver v. Graham*, 450 U.S. 24, 32, 101 S.Ct. 960, 966, 67 L.Ed.2d 17 (1981) ("effective sentence is altered once" a determinant in the prisoner's prison term is changed).[4] Other circuits have held that "parole eligibility must be considered part of any sentence." *Akins*, 922 F.2d at 1563 (case similar to the one at bar); *see also Fender v. Thompson*, 883 F.2d 303, 306 (4th Cir.1989) ("retrospective application of a statute modifying or revoking parole eligibility would" be ex post facto); *United States ex rel. Graham v. United States Parole Comm'n*, 629 F.2d 1040, 1043 (5th Cir.1980); *Shepard v. Taylor*, 556 F.2d 648, 654 (2d Cir.1977) (disallowing consideration of parole factors expressly prohibited at the time the crime was committed). When Morales committed his crime, the crime he committed carried with it a punishment that included annual consideration for parole. By retroactively changing Morales' punishment to include consideration for parole only every three years, his sentence was made more onerous in violation of the ex post facto clause.

The respondents advance two primary arguments to support the retrospective application of the 1981 amendment. First, they argue that the change is merely procedural; second, they argue the change does not adversely affect Morales. We reject both contentions.

██ A purely procedural change in the law, even if applied retroactively, does not violate the ex post facto clause. *Dobbert v. Florida*, 432 U.S. 282, 293, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977). A procedural change is one that alters the method used to make a determination; for instance, as in *Dobbert*, a statute that changes the role of the judge and jury in determining whether the death penalty should be imposed, *id.* at 293–94, 97 S.Ct. at 2298–99; or, as in *Collins*, a statute allowing an appellate court to reform an improper verdict instead of requiring a new trial. 497 U.S. at 52, 110 S.Ct. at 2724. However, a law that violates the core concerns of the ex post facto clause "is not merely procedural, even if the statute takes a seemingly procedural form." *Weaver*, 450 U.S. at 29 n. 12, 101 S.Ct. at 965 n. 12. The DSL's 1981 amendments do not simply change the procedures used to determine whether prisoners are entitled to parole or the methods used to insure compliance with the terms of parole; they eliminate the possibility of parole altogether in the period between hearings. *Cf. Roller v. Cavanaugh*, 984 F.2d 120, 124 (4th Cir.), *cert. dismissed*, ___ U.S. ___, 114 S.Ct. 593, 126 L.Ed.2d 409 (1993).[5] As noted in *Roller*,

---

that implicates the core concerns of the ex post facto clause cannot be described as merely procedural. *See Weaver v. Graham*, 450 U.S. 24, 29 n. 12, 101 S.Ct. 960, 965 n. 12, 67 L.Ed.2d 17 (1981); *United States v. Johns*, 5 F.3d 1267, 1271 (9th Cir.1993).

4. *Warden* and other cases cited herein address the ex post facto clause as it applies to Congress, U.S. Const. art. I, § 9; however, the analysis is the same under both clauses.

5. We are told that the California courts have ruled that this change in the law is procedural, *see In re Jackson*, 39 Cal.3d 464, 216 Cal.Rptr. 760, 764, 703 P.2d 100, 105 (1985); *Morris v. Castro*, 166 Cal.App.3d 33, 39–40, 212 Cal.Rptr. 299, 303–04 (1985), and that we should defer to this "finding." Terming a statute "procedural" does not make it so, *Collins*, 497 U.S. at 46, 110 S.Ct. at 2721; we thus do not think this is a factual inquiry. To be sure, we must defer to the

" 'statutes enacted or amended after a prisoner was sentenced cannot be applied to alter the conditions of or revoke his or her preexisting parole eligibility....' " *Id.* (quoting *Fender,* 883 F.2d at 306).

The respondents also contend the changes do not adversely affect Morales because it is unlikely that he would be granted parole within three years. This is irrelevant to the inquiry; Morales' claim does not depend on being able to demonstrate that he would have received parole sooner if he were granted annual parole hearings. *See Flemming v. Oregon Bd. of Parole,* 998 F.2d 721, 724–25 (9th Cir.1993). It also does not matter that Morales lacks a vested right in parole or a particular parole date. "The presence or absence of an affirmative, enforceable right is not relevant.... Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." *Weaver,* 450 U.S. at 30, 101 S.Ct. at 965.

### B. The Denial of Parole

■ The Board found Morales unsuitable for parole because he has an unstable and criminal history, his crime was particularly cruel and atrocious, he still represented a threat to others, and he needed further psychiatric counseling and treatment. Morales contends the Board violated his due process rights by relying on a probation report that contained inaccuracies.[6] In *Jancsek v. Oregon Bd. of Parole,* 833 F.2d 1389 (9th Cir. 1987), this court held that a parole board's decision satisfied the requirements of due process "if *some* evidence supports the decision." *Id.* at 1390 (emphasis in original).

"Additionally, the evidence underlying the board's decision must have some indicia of reliability." *Id.* A relevant factor in this latter inquiry is whether the prisoner was afforded an opportunity to appear before, and present evidence to, the board. *Pedro v. Oregon Parole Bd.,* 825 F.2d 1396, 1399 (9th Cir.1987), *cert. denied,* 484 U.S. 1017, 108 S.Ct. 726, 98 L.Ed.2d 675 (1988). In applying these standards to this case, it is important to note the falsehoods Morales complains about are relatively minor,[7] and nothing in the records clearly demonstrates that they are, in fact, falsehoods. The parole board's decision was based on evidence as required by *Jancsek;* specifically, Morales had previously been convicted of first degree murder and had committed the instant offense while on parole for that crime; the crime was heinous, atrocious, and cruel; and psychiatric reports indicated he should not be released. Finally, Morales not only had an opportunity to participate, but he took full advantage of that opportunity and, among other statements, denied any involvement in either murder. Based on the standards enunciated in *Pedro* and *Jancsek,* Morales' due process rights were not violated, and we affirm the district court's judgment on this count.

### C. Improper Sentencing

■ Morales details the evolution of California's sentencing statutes relative to second degree murder. Although Morales' due process rights would be violated if he were sentenced to a term greater than permitted by law, *Marzano v. Kincheloe,* 915 F.2d 549, 552 (9th Cir.1990), Morales fails to explain how his sentence of fifteen years to life is greater than that permitted by the statute then in effect, which called for this very

state courts on the construction of their laws, but this case does not involve construction of the DSL; rather, it requires consideration of the Federal Constitution, and the inquiry does not call for any special degree of deference to the state courts. *Cf. Lindsey v. Washington,* 301 U.S. 397, 400, 57 S.Ct. 797, 798, 81 L.Ed. 1182 (1937); *Powell v. Ducharme,* 998 F.2d 710, 713 (9th Cir.1993).

6. Morales also argues that dismembering an already-dead body is not torture, relying on *People v. Franc,* 218 Cal.App.3d 588, 594–95 267 Cal.

Rptr. 109, 112–13 (1990). Though this claim may be true (an issue we need not decide), dismembering a corpse may be considered evidence of a cruel, heinous, or atrocious crime. Moreover, nothing in the record clearly indicates when the dismemberment in this case occurred.

7. Some representative samples of the alleged inaccuracies include his national origin, his mother's national origin, the degree of planning involved in his crime, and a claim that he forged a diploma.

sentence. *See In re Monigold,* 139 Cal. App.3d 485, 490, 188 Cal.Rptr. 698, 701–02 (1983) (describing evolution in sentencing scheme). Perceiving no possible due process violation in Morales' sentence, we affirm the district court on this count.

## III. CONCLUSION

At the time Morales committed his crime, the punishment for that crime included annual parole hearings. Accordingly, the retrospective application of a law allowing parole hearings to be delayed for up to three years is an ex post facto law in violation of the Constitution. The district court's judgment to the contrary is reversed with instructions to enter judgment in Morales' favor and requiring the Board to comply with the law as it existed at the time Morales' crime was committed.[8] We affirm the remainder of the district court's judgment because Morales' due process rights were not violated at sentencing or at the parole hearing.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

---

8. Nothing in this opinion should be viewed as an opinion on the wisdom or advisability of releasing Morales on parole.